ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM HAVENS | ) | NO: 07-780 C |
| | ) | |
| | ) | |
| VERSUS | ) | |
| | ) | |
| | ) | COMPLAINT |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | |
| | ) | |

FILED
NOV 7 2007
U.S. COURT OF FEDERAL CLAIMS

**COMPLAINT**

Now comes before this honorable court plaintiff William Havens, a United States citizen currently domiciled in Sweeney, Texas, who by these presents respectfully avers:

I.

Made defendant herein is the United States of America.

II.

Jurisdiction is invoked and sovereign immunity is waived in this matter pursuant to the Tucker Act 28 U.S.C. § 1491 and the Military Pay Act, 37 U.S.C. § 204. The matter is brought pursuant to 28 U .S.C. § 1491(a) for moneys due under the Constitution of the United States, an Act of Congress and/or the regulation of an executive department or in the alternative upon a express or implied contract with the United States.

III.

Plaintiff William Havens was commissioned an Ensign in the United States Naval Reserve on 22 March 1980.

IV.

Prior to his entry onto active duty, plaintiff did not suffer from any medical injury.

V.

Plaintiff transferred to the Training and Administration of Reserve (TAR) program in 1986.

VI.

Plaintiff reported to Naval Reserve Readiness Center Treasure Island in June 1994 as a Lieutenant Commander (O-4).

VII.

In February of 1995, plaintiff's skin under the nail of his left ring finger began to retract. He sought treatment from the base medical facility.

VIII.

In June of 1995 plaintiff began experiencing skin problems in the rump area.

IX.

In July 1995 plaintiff became increasingly fatigued, no longer being able to run the timed command physical fitness run.

X.

The Fiscal Year 1996 Commander (O-5) selection board failed to select plaintiff for promotion.

XI.

By the end of the summer of 1995 plaintiff was experiencing additional fatigue and pain and had developed a limp due to pain in his feet.

XII.

During September 1995, plaintiff was treated at the Oaknoll Naval Hospital. He was

diagnosed as having psoriasis and the swelling in toes and fingers as psoriatic arthritis.

XIII.

During this time period, Oaknoll was undergoing closure as part of the Base Realignment and Closure Committee (BRAC) process. Doctors and other medical personnel were on leave and/or being transferred.

XIV.

Medical care and administration at Oaknoll during this period was sub-standard.

XV.

Plaintiff was referred to Travis Air Force Base medical center for additional testing, all of which was reported as negative.

XVI.

In early 1996, plaintiff's command, which was also marked for closure due to BRAC, commenced the decommissioning process.

XVII.

At a required transition seminar sponsored by the Navy, plaintiff was told that he should be evaluated by the physical disability evaluation system.

XVIII.

At plaintiff's request, his command asked the Treasure Island Clinic to ascertain whether the physical disability process was applicable. As the Commanding Officer was on leave, action was delayed for one week.

XIX.

At Travis Air Force Base hospital, plaintiff asked that a medical board, the first step in

the physical disability process, be scheduled.

XX.

The Air Force medical staff at Travis was unsure how to process a Naval officer for the physical disability evaluation system and did not possess any of the pertinent Navy directives.

XXI.

No action was ever taken by Air Force or Navy medical personnel.

XXII.

The Fiscal Year 1997 Commander (O-5) selection board failed to select plaintiff for promotion.

XXIII.

Pursuant to 10 U.S.C. § 14506, the plaintiff was required to be released from active duty the first day of the seventh month after the month in which the President approved the report of the board.

XXIV.

Plaintiff began to transition to civilian life.

XXV.

Plaintiff reported to Treasure Island Clinic for the required discharge physical.

XXVI.

The Medical Officer at Treasure Island Clinic indicated the Commanding Officer did not want to do a medical Board because it could delay plaintiff's discharge and because the facility was understaffed due to the impending closure.

XXVII.

Plaintiff was improperly found to be fit for discharge and fit for affiliation with the Selected Reserve.

XXVIII.

Plaintiff was accepted for affiliation in the Selected Reserve.

XXIX.

Naval, Reserve Readiness Center Treasure Island closed in July of 1996 and plaintiff was transferred under temporary additional duty orders to Naval Reserve Readiness Center, Alameda, California.

XXX.

Plaintiff was released from active duty on 31 August 1996, after 16 years 5 months and 9 days of service.

XXXI.

Plaintiff commenced drilling as a Selected Reservist in September 1996 at the Naval Reserve Center, Sacramento, California.

XXXII.

Plaintiff was excused from the next physical readiness test (PRT).

XXXIII.

Plaintiff underwent his annual physical in January of 1997 and was found physically qualified. The psoriasis and arthritis condition was permanent and stable.

XXXIV.

Plaintiff was transferred back to Naval Reserve Center Alameda.

XXXV.

Plaintiff completed the PRT in the Spring of 1997. Due to pain in his feet he was unable to complete the run portion of the test, instead exercising the alternate swimming option.

XXXVI.

In August of 1997, plaintiff was sent to Korea on annual training. He suffered a flare-up of his illness while in Korea.

XXXVII.

In September 1997, plaintiff was rated as 40% service connected disability by the Department of Veterans Affairs. Disability was based on psoriasis 10%, arthritis 20% and undiagnosed illness as 10%.

XXXVIII.

A copy of the Department of Veterans Affairs rating was provided to the Naval Reserve Center Alameda Medical department and included in plaintiff's file.

XXXIX.

In November 1997, plaintiff was activated and sent to Croatia to act as a port officer for a United States aircraft carrier entering a Croatian port. Plaintiff suffered a flare-up of his illness while in Croatia.

XL.

Plaintiff completed the active duty and returned to inactive status.

XLI.

Plaintiff was not selected for promotion by the inactive duty Fiscal Year 1998 Commander selection board.

XLII.

Because he was on active duty, plaintiff did not take the fall 1997 PRT.

XLIII.

In early 1998 plaintiff was transferred back to the Naval Reserve Center Sacramento.

XLIV.

In January 1998, plaintiff was again found physically qualified for duty in the Reserves despite the psoriasis and psoriatic arthritis.

XLV.

In March of 1998 plaintiff was notified that he had actually been selected for Commander by the inactive duty Reserve Commander selection board but that his name was not initially included because of an administrative review due to a grounding episode in one of his sea tours.

XLVI.

With the administrative review complete and resolved in his favor, plaintiff was now slated for promotion to Commander.

XLVII.

On October 1, 1997, plaintiff was promoted to Commander. He was transferred to a non-pay status.

XLVIII.

In March of 1998, plaintiff was awarded vocational rehabilitation by the Department of Veterans Affairs due to the impact of his service connected disability on his ability to find and maintain employment.

XLIX.

During the fall of 1998, plaintiff continued to suffer from the effects of the psoriasis and psoriatic arthritis. He found walking very painful due to pain.

L.

The Department of Veterans Affairs Medical Center (VAMC) tried varied means of treatment without success, During this period the VAMC dermatology started monitoring skin problems and used prolonged antibiotics to combat on going skin infections.

LI.

In January of 1999, despite the psoriasis and psoriatic arthritis and a pronounced limp, plaintiff was found to be physically qualified,

LII.

In February of 1999 the active duty Hospital Corpsman Chief Petty Officer (HMC) informed plaintiff that he should not have been allowed to affiliate in the Selective Reserve. When plaintiff indicated he could probably not successfully complete the PRT, the HMC suggested to plaintiff that he take a leave of absence for six months via authorized absences and then request retirement upon return.

LIII.

Plaintiff was in an authorized absence status from March to September 1999.

LIV.

In January of 2000, plaintiff was found physically qualified despite the psoriasis and psoriatic arthritis.

LV.

In May of 2000, plaintiff was transferred to Naval Air Reserve Center (NARC) San Jose, California.

LVI.

In May of 2000 NARC San Jose transferred plaintiff to a not physically qualified status, without evaluation by a medical officer.

LVII.

NARC did not conduct a Line of Duty (LOD) determination as required by regulations.

LVIII.

In October of 2000, plaintiff was told orally by the NARC medical officer that he was physically qualified.

LIX.

In January of 2001, the Bureau of Medicine and Surgery directed that plaintiff be placed in a "Category 5" not physically qualified status due to the existing psoriasis and psoriatic arthritis.

LX.

In January 2001, plaintiff verbally requested to be placed in the physical disability program and that he be treated as an active duty member pursuant to Department of Defense Instruction (DOD Inst 1332.38 ¶ E3.P4.3 and Secretary of the Navy Instruction (SECNAVINST 1770.3B) ¶ 8c.

LXI.

In March 2001, plaintiff submitted a request to be recalled to active duty for medical

treatment.

LXII.

In May of 2001, plaintiff was advised telephonically that he was eligible for a fitness for duty determination by the disability evaluation system pursuant to Secretary of the Navy Instruction (SECNAVINST) 1850.4D ¶ 3309.

LXIII.

In June 2001 plaintiff was found to be fit for duty by the Physical Evaluation Board as authorized by 10 U.S.C. § 1216.

LXIV.

The Commanding Officer NARC San Jose informed plaintiff he would be processed as being unsuitable for Reserve duty due to the psoriasis and arthritis.

LXV.

In July of 2001 the Physical Evaluation board reversed itself and found plaintiff to be not fit for duty and not physically qualified to continue Reserve status. They further found that the disability was not a proximate result of performing military duties.

LXVI.

In August of 2001, plaintiff requested a formal Physical Evaluation Board.

LXVII.

LT Kim Black, (JAGC) USNR was assigned as plaintiff's legal counsel.

LXVIII.

This was her first disability benefits case.

LXIX.

LT Black provided ineffective assistance of counsel by *inter alia* erroneously informing plaintiff that he could receive only a physically qualified/not physically qualified finding from the board.

LXX.

Regulations in force at this time, specifically SECNAVINST 1850.4d ¶ 3309 provided that a reservist who served more than thirty days active duty who was currently in the inactive reserves and who's condition incurred or was aggravated on active duty should be determined to be fit or unfit and if unfit, awarded disability benefits or severance pay.

LXXI.

LT Black failed to respond to telephone calls.

LXXII.

LT Black further erroneously advised plaintiff that he could not present active duty matters to the board.

LXXIII.

LT Black erroneously informed plaintiff that if he did not accept the results then the PEB would declare him fit for duty.

LXXIV..

LT Black further informed plaintiff that he would be processed for separation due to unsuitability unless he accepted the PEB findings.

LXXV.

On November 8, 2001, at the insistence of his counsel, plaintiff accepted the findings of

the PEB.

LXXVI.

On January 2, 2002, the Physical Evaluation board found plaintiff not physically qualified for active duty in the Naval Reserve.

LXXVII.

On March 1, 2002, plaintiff was transferred to the Retired Reserve.

LXXVIII.

Plaintiff filed a petition for relief pursuant to 10 U.S.C. § 1552 with the Board for Correction of Naval Records Docket number 1562-05.

LXXIX.

On August 3, 2006 the Board for Correction of Naval Records denied relief.

LXXX.

On April 9, 2007, the Board for Correction of Naval Records denied plaintiff's request for reconsideration.

LXXXI.

From the time of his diagnosis while on active duty until separation, plaintiff's condition has been permanent and stable. Subsequently, the Department of Veterans Affairs increased his disability percentage due to his unemployability as well as a misapplication of the statutory criteria to the plaintiff's situation.

LXXXII.

Governmental agencies, including the Department of the Navy, are required to follow the Constitution and laws of the United States as well as their own regulations.

LXXXIII.

The United States is required to follow its own statutes and regulations.

LXXXIV.

Defendant United States failed to follow their own statutes regulations and directives.

LXXXV.

Defendant was improperly released from active duty in 1996 despite being medically unfit for release from active duty.

LXXXVI.

Defendant United States deprived plaintiff of monetary benefits including pay, allowances and disability retired pay by failing to follow its own instructions, specifically the Manual of the Medical Department, by failing to convene a medical board in 1996 and referring the medical board to the Physical Evaluation Board pursuant to SECNAVINST 1850.4 series while plaintiff was on active duty.

LXXXVII.

Defendant United States deprived plaintiff of monetary benefits including pay, allowances and disability retired pay by acting arbitrarily and capriciously, in violation of the Constitution, laws and regulations of the United States in finding him not physically qualified instead of unfit for duty.

LXXXVIII.

Defendant United States through its Board for Correction of Naval Records, deprived plaintiff of monetary benefits including pay, allowances and disability retired pay by acting arbitrarily and capriciously, in violation of the Constitution, laws and regulations of the United

States in failing to correct his record.

LXXXIX.

Defendant United States through its Board for Correction of Naval Records, deprived plaintiff of monetary benefits including pay, allowances and disability retired pay by making a decision to not correct plaintiff's record without substantial evidence to support that decision.

XC.

Defendant United States through its Board for Correction of Naval Records, deprived plaintiff of monetary benefits including pay, allowances and disability retired pay by not following its enabling legislation and the equitable powers granted therein in failing to correct plaintiff's record and grant the requested relief.

XCI.

Pursuant to 10 U.S.C. § 1074, plaintiff has a constitutionally protected property interest in receiving medical treatment while on active duty.

XCII.

The plaintiff was denied his right to medical treatment without notice or a hearing as required by the due process clause of the Fifth Amendment to the United States Constitution.

XCIII.

By depriving plaintiff of his constitutional rights, defendant United States deprived plaintiff of monetary benefits including pay, allowances and disability retired pay by not retaining him on active duty to receive medical treatment.

WHEREFORE PLAINTIFF PRAYS THAT for the foregoing reasons set forth, that this court restore plaintiff to active duty with all pay and benefit retroactive to September 1, 1996 and

direct that he be evaluated pursuant to SECNAVINST 1850.4 series to determine whether he is fit for release from active duty and retirement or whether he should be processed pursuant to the Disability Evaluation System. In the alternative plaintiff prays that the decision of the Physical Evaluation Board be modified and that he be granted benefits or separation pay pursuant to SECNAVINST 1850.4D. Plaintiff further prays that he be awarded all costs of this action, attorney fees pursuant to the Equal Access to Justice Act, and all other relief that this court finds to be just and equitable.

Respectfully Submitted,

John B. Wells
Attorney for the Plaintiff
LA Bar #23970
Post Office Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd, Suite 201D
Slidell, LA 70458 (physical)
985-641-1855
985-649-1536 (fax)