# United States of America

## DEPARTMENT OF THE NAVY

*Washington, D. C.,* 20370-5100

**I hereby certify** *that the annexed* pages 001-266 constitute a true and accurate copy of the administrative file of the Board for Correction of Naval Records in the case of CDR William Havens, USN, xxx-xx-1115; such record being kept in the ordinary course of official supervision and custody

*on file in the* Board for Correction of Naval Records

W. DEAN PFEIFFER

(Official Title)

Executive Director
Board for Correction of Naval Records
Washington, D. C. 20370

OFFICE OF THE SECRETARY

**I hereby certify** *that* W. Dean Pfeiffer

*who signed the foregoing certificate, was at the time of signing*

Executive Director, Board for Correction of Naval Records

*and that full faith and credit should be given his certification as such.*

**In testimony whereof,** *I have hereunto set my hand and caused the Seal of the Navy Department to be affixed this* 28 *day of* April, *two thousand* eight

H. R. Molinengo, II
Captain, JAGC, U.S. Navy
(Operations and Management)
For the Secretary of the Navy

NAVJAG 5800/2 (REV. 02-0[illegible]

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE
Docket No. 01562-05
9 April 2007

CDR WILLIAM R HAVENS
USRN RET

Dear Commander Havens:

This is in reference to your request for further consideration of your application for correction of your naval record pursuant to the provisions of title 10 of the United States Code, section 1552.

The staff of the Board often obtains opinions from other activities within the Department of the Navy. Those opinions are advisory in nature and not binding on the Board. Although the Board disagreed with the opinion of the Director, Secretary of the Navy Council of Review Boards, that you should have been evaluated under the fit/unfit standard, vice the physically qualified/not physically qualified standard, it concurred with the opinion that you failed to demonstrate that you were unfit for further service by reason of physical disability at the time of your transfer to the Retired Reserve.

As you have been advised in previous correspondence, you are entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board. After carefully considering your request, I have determined that you have not submitted any

new material evidence or other matter not previously considered by the Board. Accordingly, I have denied your request.

I regret that my reply cannot be more favorable.

Sincerely,

W. DEAN PFEIFFER
Executive Director

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE:jdh
Docket No: 1562-05
7 August 2006

MR WILLIAM J HOLMES
ATTORNEY AT LAW
6064 INDIAN RIVER ROAD SUITE 203
VIRGINIA BEACH VA 23464

Dear Mr. Holmes:

This is in reference to your interest, as counsel, in the case of CDR William R. Havens, USNR, Retired.

Enclosed is a copy of a letter to Commander Havens, informing him that his application has been denied. It is requested that you transmit the denial letter to him, a copy of which is enclosed for your records

It is regretted that a more favorable reply cannot be made.

Sincerely,

W. Dean Pfeiffer

W. DEAN PFEIFFER
Executive Director

Enclosures

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE
Docket No. 01562-05
4 August 2006

CDR WILLIAM R HAVENS

Dear Commander Havens:

This is in reference to your application for correction of your naval record pursuant to the provisions of title 10 of the United States Code, section 1552.

A three-member panel of the Board for Correction of Naval Records, sitting in executive session, considered your application on 3 August 2006. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record and applicable statutes, regulations and policies. The Board also considered the advisory opinions furnished by Director, Secretary of the Navy Counsel of Review Boards (SECNAVCORB) dated 22 March and 8 June 2006, and your responses thereto. A copy of each advisory opinion is attached.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice. In this connection, the Board substantially concurred with the comments contained in the advisory opinions; however, the Board did not accept the determination of the Director, SECNAVCORB, that the Physical Evaluation Board (PEB) "should have made a determination of Fit vs. Unfit vice PQ vs. NPQ for Continued Naval Reserve Service", as it was not persuaded that the condition in question recurred during, or was aggravated by, your service in the Naval Reserve following your release from extended active duty in 1996. In addition, the

Board noted that the provisions of DOD Instruction 1332.38, section E3.P4.3, do not suggest that the PEB should have made a determination of your fitness for duty, rather your physical qualification for further service in the Naval Reserve, as you maintain. The Board concluded that even if the PEB had determined that you were unfit for duty, you would not have met the criteria for a disability rating of 30% or higher and, therefore, would not have been entitled to retirement by reason of physical disability.

In view of the foregoing, your application has been denied. The names and votes of the members of the panel will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken. You are entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records. Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of probable material error or injustice.

Sincerely,

W. DEAN PFEIFFER
Executive Director

****** FOR OFFICIAL USE ONLY - PRIVACY ACT PROTECTED ******

MEMORANDUM TO FILE

*01562-05*
*01562-05*

Docket No. 01562-05

Examiner: JRE Branch/Status 2R-USNR, RETIRED

Subj: Ex-CDR Havens, William R.,

Personal appearance requested: YES Reconsideration: YES

Action Requested: 6

In addition to Petitioner's application (DD-149) with any attachments and any related correspondence, the Board considered the following records:

- [ ] Enlisted/Officer Service Record
- [ ] Examiner's Case Summary
- [ ] NDRB File
- [ ] Record of Court-Martial
- [ ] Medical Record
- [ ] VA Records
- [ ] PEB Record
- [ ] Advisory Opinion
- [ ] Other: ______

Messrs. Cooper & Washington

Ms. Nofziger

voted on 3 Aug 06 to:

EXECUTIVE SESSION

- [ ] Grant relief
- [ ] Partial relief
- [x] Deny

- [ ] Grant personal appearance

- [ ] Minority Vote: Mr/Ms ______ voted To ______

Comments: ______

- [ ] That Petitioner's naval record be corrected to show that on ----/--/-- /or ______.

Petitioner was issued a honorable/general discharge by reason of misconduct/or ______. vice the discharge actually issued on that date.

July 5, 2006

Department of the Navy
Board for Correction of Naval Records
2 Navy Annex
Washington, D.C. 20370-5100

Subj: RESPONSE TO ADVISORY OPINION CASE OF CDR WILLIAM R. HAVENS, USNR BCNR Docket No. 01562-05

Ref: (a) SECNAVINST 1850.4E

1. Navy Council of Review Boards has submitted an advisory opinion dated 22 March 2006, concedes that the Physical Evaluation Board [PEB] failed to follow the explicit legal standard governing this situation. I wish to add to the response provided by William J. Holmes, Civilian Defense Counsel on my behalf.

"Navy Council of Review Boards recommendation to change the informal board finding to "FIT" is completely against SECNAVINST 1850.4E. The informal board results were issued and I elected for a formal board which was then improperly limited to reserve findings. The informal board results were forwarded for a formal board and under reference (a) none of the four conditions cited section 4214 for reconsideration by the informal board applies."

Sincerely,

William R. Havens

DEPARTMENT OF THE NAVY
NAVAL COUNCIL OF PERSONNEL BOARDS
720 KENNON STREET SE STE 309
WASHINGTON NAVY YARD DC 20374-5023

IN REPLY REFER TO

5220
CORB:003
8 Jun 06

From: Director, Secretary of the Navy Council of Review Boards
To: Executive Director, Board for Correction of Naval Records

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF FORMER CDR WILLIAM R. HAVENS, USNR, RETIRED,

Ref: (a) Your ltr JRE:jdh Docket No: 01562-05 of 31 May 06
(b) CORB 5220:00s of 22 Mar 06
(c) DODI 1332.38

1. The petitioner's case was again reviewed following submission of his rebuttal to reference (b). In response, the below comments are provided.

2. As stated in reference (b), it is our continued opinion that petitioner should have received a "Fit/Unfit" vice "Physically Qualified/Not Physically Qualified" determination from the Physical Evaluation Board in Jul 2001. Our previous determination was not consistent with policy regarding the administrative processing of cases similar to petitioner's. That policy, in summary, allows the PEB to issue a Fit/Unfit determination when it can be established by the evidence of record that the member (who was previously on active duty either as a recalled reservist or active duty member) incurred a condition while on the previous period of active duty, that the condition was actually unfitting at the time of the member's release from active duty, or, that although not unfitting upon release, the condition was aggravated while on a subsequent reserve or active period of duty. This policy is consistent with guidance contained in reference (c) that provides for the rating of prior service impairments (section E3.P4.5.3) and for adjudicating reserve component member cases under the statutory provisions applicable to his or her duty status at the time of onset or aggravation of the condition (section E3.P4.3).

3. In petitioner's case, it was determined, having provided him the benefit of the doubt, that his condition, which was incurred while on active duty, was possibly aggravated while in a reserve status. However, although petitioner was entitled to a Fit/Unfit determination, a preponderance of the evidence clearly shows that his condition, although possibly aggravated, was not an unfitting condition at the time of his release from active duty or during his subsequent reserve period of service. As noted in reference (b), under the DoD Disability Evaluation System, the mere presence of a condition does not render an individual unfit for duty. There must also be a showing that he is unable to perform duties appropriate for his office, grade, rank, or rating. Such a finding could not be made in petitioner's case.

3. In conclusion, petitioner's request for disability retirement is not supported.

M. D. CULVER

**William J. Holmes**
*Attorney at Law*
6064 Indian River Road
Suite 203
Virginia Beach, Virginia 23464
(757) 420-9321 Off
(757) 420-4169 Fax

April 27, 2006

From: William J. Holmes, Civilian Defense Counsel
To: James R. Exnicios, Head, Disability Section
Board for Correction of Naval Records

Subj: RESPONSE TO ADVISORY OPINION;
CASE OF CDR WILLIAM R. HAVENS SNR
BCNR Docket No. 01562-05

Encl: (1) Bureau of Medicine and Surgery ltr 610/252 dtd 11 Jan 2001
(2) Navy Personnel Command ltr 6110 dtd 25 Jan 01
(3) Naval Air Reserve Center, San Jose ltr 6120 dtd 7 Jul 01

1. In the instant case, the Navy Council of Review Boards has submitted an advisory opinion which was served on CDR Havens who forwarded it to me last week. This advisory opinion dated 22 March 2006, concedes that the Physical Evaluation Board [PEB] which heard CDR Havens' case used an improper and incorrect standard in resolving this case and failed to follow the explicit legal standard governing this situation. Thus, the Navy has admitted that CDR Havens should have been evaluated by the PEB with a line of duty determination for his medical conditions, the very point made in our petition to this Board..

2. It is submitted that such a response demands that the relief requested in the instant petition be granted. The Navy has conceded that the required and proper legal standards were not used by the PEB in 2001 and that it cannot be upheld. Since the PEB was not conducted in the appropriate manner in accordance with regulations and did not address the issue of fitness/unfitness for duty as it was required to do, there are only two possible remedies available: (1) to change the Not Physically Qualified finding of the PEB into an Unfit for Duty determination and then to retire CDR Havens in accordance with Title 10, U.S.C. section 1201 retroactive to 1 March 2002, the date when he was improperly transferred to the Ready Reserves rather than properly being retired; or (2) to direct that a new PEB be convened to make this determination after hearing all relevant evidence of CDR Haven's medical condition and the extent of his disability or impairment.

3. It is submitted that either of these two options are the only possible remedy for the incorrect and defective PEB. The PEB recognized that CDR Havens was not able to perform reserve duties and declared him not physically qualified for continued reserve status. Had they used the correct standard, it is likely that would have declared him unfit for duty based on the medical evidence of CDR Havens' conditions. CDR Havens had been ill and diagnosed with and treated for psoriasis and psoriatic arthritis by Dr. Craig at the Navy Medical Clinic, Treasure Island, California since 1995 while on active duty. This condition did not go away but persists to this day. In fact, it has progressed such that the Veteran's Administration has awarded him 100% service connected disability for these conditions. Even in 2001, these conditions substantially affected CDR Havens' ability to perform his military duties. On 11 January 2001, the Bureau of Medicine and Surgery assigned CDR Havens a physical risk classification of "5" and "is not physically qualified for retention in the naval service due to psoriatic arthritis and psoriasis." Enclosure (1). On 25 January 2001, the Navy Personnel Command concluded that in accordance with the relevant directives including the MILPERSMAN and SECNAVINST 18504, CDR Havens deemed to be not physically qualified for retention in either the Ready Reserve or Standby Reserve and that he could not perform any training, active or inactive and could only complete Navy correspondence courses. Enclosure (2). Additionally, On 7 July 2001, the Commander, Naval Air Reserve Center, submitted a letter that CDR Havens suffered pain, was unable to stand for moderate periods of time and has great difficulty with stairs as a result of his medical conditions and that normal performance of duties would likely exacerbate his condition. The Commander then concluded by stating that he could not "assign him to any billet requiring worldwide assignment" and that CDR Havens should be found "physically unfit for further service" and that his retention was "not in the best interest of this command or the United States Navy." Enclosure (3). These facts certainly supported and warranted the PEB's determination of not physically qualified. Thus, this same information would also warrant this Board's conclusion that if the PEB had applied the correct standard, they would have made a determination that CDR Havens was and is unfit for military duty and should be medically retired in accordance with section 1201 of Title 10, U.S. Code.

4. Although it would be appropriate for this Board to conclude that CDR Havens is unfit for duty and to medically retire him, the other acceptable option would be to simply order that a new PEB be convened to consider CDR Havens' case under the appropriate standards and to made a determination of his fitness or unfitness for continued duty in the naval service. In that instance, a whole new medical board procedure would be conducted. He could be given a comprehensive medical evaluation of his conditions and impairments and his ability to perform military duties so that the PEB would have all of the relevant evidence to make their determination.

5. Directing the Navy to convene a new PEB to make a correct determination of CDR Havens' fitness or unfitness for duty would certainly would be an appropriate and legitimate response to this instant case. Since the PEB was not conducted properly and did not make a required determination, a decision from this Board to reconvene a new board and to perform their duties in the correct manner would be manifestly warranted

and appropriate. However, in light of CDR Havens' documented decade-long history of psoriasis and psoriatic arthritis and the V.A. determination that he is 100% disabled as a result of these conditions, this Board may well determine that a more efficient and effective result would be to simply determine that CDR Havens is unfit for military duty and to medically retire him. Such a decision would negate the need for recalling CDR Havens back to active duty and preclude the need for the investment of substantial time and resources, both personnel and financial, which would be incurred by conducting a new PEB. Either of these options would be appropriate and would satisfy CDR Havens.

6. What cannot be done is the action recommended by the advisory opinion. After conceding that the PEB was conducted in violation of the required directives and cannot be upheld, the advisory opinion recommends that this Board reach a conclusion which is directly contrary to the findings of the PEB in 2001. This opinion expressly requests that this Board make the unilateral determination that CDR Havens is and was fit for full duty and to simply amend the findings of the previous PEB. Such a result is blatantly impermissible. The determination which the advisory opinion requests this Board to make is directly contrary and contradictory to the decision made by the PEB. The PEB considered the available medical evidence of CDR Havens' medical conditions and determined that CDR Havens was NOT PHYSICALLY QUALIFIED for further military service. The advisory opinion requests this Board to conclude that CDR Havens is "fit for full duty" despite his medical conditions which have been present for over a decade. Despite the extremely selective and one-sided recitation of facts summarized in the advisory opinion, the PEB found that he was not qualified for military duty, even in the reserves. This same conclusion was directly supported by the determinations made by the Bureau of Medicine and Surgery and the Navy Personnel Command, both of whom expressly concluded that CDR Havens was not physically qualified for retention in the naval service due to psoriatic arthritis and psoriasis." Enclosures (1) and (2). Additionally, the Commander, Naval Air Reserve Center concluded he could not "assign him to any billet requiring worldwide assignment" and that CDR Havens should be found "physically unfit for further service" and that his retention was "not in the best interest of this command or the United States Navy." Enclosure (3). These facts certainly supported the PEB's determination and expressly contradict the advisory opinion's recommendation that this Board determine that CDR Havens is and was fully fit for military duty.

7. As a direct result of the legal and factual errors committed by the previous PEB, CDR Havens was separated from the reserves by reason of physical disability and transferred to Retired Reserve status when he was required to have been medically retired pursuant to 10 U.S.C. 1201 and afforded the appropriate disability rating because his disabling conditions were incurred while he was serving on active duty for more than 30 days. In order to correct this legally incorrect and erroneous result which has caused a blatant miscarriage of justice, it is respectfully requested that this Board correct this mistake by announcing a direct order and decree that CDR Havens should be granted retirement in accordance with Title 10, U.S.C. section 1201 retroactive to 1 March 2002, the date when he was improperly transferred to the Ready Reserves rather than properly being retired. This is the result which should have been announced previously and such

an order now would be the best means of putting CDR Havens in the position where he should have been all along. At a bare minimum, this Board must at least declare the conclusions and findings of the previous PEB to be factually and legally incorrect and therefore, null and void, and to order a new PEB hearing to be conducted in accordance with the applicable law.

8. Wherefore, for all the reasons discussed above, it is submitted that corrective action by this Board is required both factually and as a matter of law. The PEB which was held in 2001 failed to follow the correct legal standard as required by the United States Code and various DOD and SECNAV instructions, and the Navy has expressly conceded this point in their advisory opinion. Based upon this failure to correctly apply the law, an improper and unwarranted conclusion was mistakenly reached. Because CDR Havens' medical condition was incurred and began while he served on active duty for an extended period of time, some sixteen (16) years, he was required to be processed under the standards for evaluation for active duty service members and eligible for retirement under 10 U.S.C. section 1201. However, the PEB erroneously treated him as a reservist who had not served on active duty and ordered him into Retired Reserve status pursuant to section 1204. Such a result was both legally and factually incorrect and requires corrective action from this Board to grant retirement to CDR Havens pursuant to 10 U.S.C. section 1201 retroactive to 1 March 2002, the date when he was improperly transferred to the Ready Reserves rather than properly being retired.

Respectfully submitted,

William J. Holmes
Counsel for CDR William R. Havens

DEPARTMENT OF THE NAVY
SECRETARY OF THE NAVY COUNCIL OF REVIEW BOARDS
720 KENNON STREET SE STE 309
WASHINGTON NAVY YARD DC 20374-5023

IN REPLY REFER TO
5220
CORB: 00s
22 Mar 06

From: Director, Secretary of Navy Council of Review Boards
To: Executive Director, Board for Corrections of Naval Records

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF CDR WILLIAM R HAVENS, USNR, RETIRED,

Ref: (a) Your ltr JRE:jdh Docket No: 01562-05 of 8 Mar 06
(b) SECNAVINST 1850.4E

1. The petitioner's case history, contained in reference (a), was thoroughly reviewed in accordance with reference (b) and is returned. The following comments are provided.

2. In a 21 February 2005, Petitioner (a former CDR/USNR, reportedly, with about 16 years ACDU [?1980-1996]) contends that a 1 March 2001 Physical Evaluation Board (PEB) erred in its determination that a the former member's psoriatic arthritis rendered Petitioner NPQ, but, rather, that he should have been "retired by reason of physical disability on 1 MAR 2002 with a proximate finding which should have been line of duty finding."

3. Pertinent documentary history includes:

a. Late 1995 sf600 Health Record Entries (Treasure Island) indicating persistent painful swollen Left dominant 4th finger DIP & Right great toe onycholysis, a 2 year history of intergluteal skin rash, and fevers & fatigue.

b. 06 February 1996 sf600 HRE indicating diagnosis of PSORIATIC ARTHRITIS "by BX (biopsy) Nov '95".

c. 09 September 1996 Separation Physical Exam sf93 mentions Psoriatic Arthritis, further indicating that Petitioner was a TAR and "was diagnosed/treated for this condition during 1995-96 and was found FIT for full duty and qualified for separation/retirement/transfer to Fleet Reserve during Retirement Physical on 27 June 96."

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF CDR WILLIAM R HAVENS, USNR, RETIRED,

d. A 24 September 1997 Oakland Regional VA rating of 40% as follows:
   i. PSORIATIC ARTHRITIS 20%
   ii. PSORIASIS WITH ONYCHOMYOSIS and "history of paronchia [sic] & staph 10%"
   iii. UNDIAGNOSED ILLNESS manifested by fatigue & recurrent fevers 10%

e. A 21 October 2000 sf88 Physical Examination which recommended "Board Review for 'Psoriatic arthritis' history" and noted "swelling DIP joint Left 4th finger" & "swelling 1st & 2nd toes bilaterally."

f. An 11 March 2001 NMA/COMNAVRES Voluntary Training Unit 887 to PERS 911 indicated that Petitioner had not been on ACDU since 30 May 2000, that he was working within his designator (1115), that "arthritis limits time standing and grasping of heavy objects with left hand. …has not been in a full duty status since…May 30, 2000." Further, his condition had <u>not required time away from duties for treatment/evaluation/ recuperation while as a SELRES</u>, but Petitioner had been awarded 40% by the VA.

g. A 21 April 2001 sf93 physical examination found Petitioner NPQ "psoriatic Arthritis since 1995…Since 1998 pt did not participate in PRT…40% disability from VA."

h. A 13 June 2001 IPEB finding of PQ.

i. A 7 July 2001 COMNAVRESCEN NMA ltr to PPB recommending reconsideration based on Petitioner's contention "that his arthritis causes pain, prevents him from standing for moderate periods of time and that he has great difficulty descending stairs. The results of his latest medical examination on 21 April 2001 and another examination by a VA rheumatologist support these contentions…I am not reasonably certain that the normal performance of duties would not significantly exacerbate CDR Havens' medical condition…I cannot in good conscience assign him to any billet requiring worldwide assignment."

j. A 19 July 2001 IPEB finding of NPQ.

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF CDR WILLIAM R HAVENS, USNR, RETIRED,

k. A 26 September 2001 ltr from Kevin L. Craig, LCDR/MC/USN ("former active duty Navy general medical officer … stationed at the Branch medical Clinic Treasure Island from 08/95 to 05/97" & conducted Petitioner's separation physical exam) indicated, "After reviewing…the letter by Dr. Mary Nakamura of the Arthritis Clinic at ASFVAMC, I find no evidence that his disease has significantly progressed since the time I performed his separation physical in 1996 [when]…he was manifesting an exacerbation of his disease, which is both typical and expected of this disease and not representative of a worsening of his arthritis…[therefore] if he was physically qualified…in 1996, then…he should be found physically qualified now. [underlining added]"

l. A 27 September 2001 ltr from Petitioner requested "re-opening of docket No: 7277-99 for reconsideration…"

m. A 29 October 2001 BCNR response, including, "Although psoriatic arthritis can be a serious disease process, it was manifested in your case by fatigue, reduced exercise tolerance, and pain in a finger and two toes, which did not preclude your [SIC] from performing you duties (prior to 1 September 1996 release from ACDU)."

n. A CNPC ltr of 25 January 2001 "assigned me a Physical Risk Classification of '5' for…psoriatic arthritis and psoriasis."

o. A 09 July 2001/VA Staff Rheumatologist evaluation by Mary Nakamura, MD indicated that Petitioner, "is followed in the Arthritis Clinic at the SPVAMC …psoriatic arthritis. His symptoms began in September 1995. Since that time he has had a series of symptoms including arthritic complaints in the hands, ankles, feet, and low back. Until recently, his symptoms were limited and treated with regular doses of NSAIDS. His low back pain has persisted for 4 years. He also cites intermittent recurrent pain and swelling of the joints in the regions described above. He currently reports pain at the left 4th finger, distal interphalangeal joint. The base of his right thumb has been chronically inflamed. He also has had nail changes and skin eruptions…bilateral great toe pain, at the interphalangeal joint. Radiograph data show

corrosive changes of the joints particularly in the left 4th finger and the first metatarsal-phalangeal joints of both feet. Beginning in May 2001, he developed worsening right ankle pain due to inflammatory arthritis and Achilles tendon enthesopathy. Due to these symptoms, he reports inability to walk quickly or run. …due to a flare in his psoriatic arthritis. …has been started on Methotrexate…mild improvement in pain…continues to have difficulty with ambulation. Over the next 6 months…should not engage in activities requiring prolonged or rapid ambulation."

p. A 28 December 2001 DIRNCPB response to Petitioner's letter of 20 December 2001 indicated that "as a drilling reservist without a Notice of Eligibility [the PEB determination options were limited to PQ or NPQ vice Fit or Unfit]…The fact that he became a drilling reservist after the incurrence of a disability makes him ineligible for a FIT/UNFIT determination."

4. In summary, review of the available documents, including the foregoing, suggests that Petitioner did, indeed:

a. develop manifestations of Psoriasis with Psoriatic Arthritis while on ACDU in about 1995 while on ACDU per orders for a period of over 30 days;

b. on 24 September 1997, receive an award of 40% from the VA (30% due to manifestations of Psoriasis & 10% for "Undiagnosed Illness");

c. develop an exacerbation of his Psoriasis during subsequent Reserve duty, ultimately, resulting in referral to the PEB, which, by the 19 July 2001 finding of the IPEB, determined that Petitioner's condition rendered him NPQ; but

d. was the subject of a 2001 era NMA that strongly suggests that his medically related impairment for continued reserve duty was largely limited to restrictions on PRT performance & deployability. This, latter, along with the 26 September 2001 letter of Dr. Kevin Craig, calls into question the accuracy of the above IPEB determination and, indeed, suggests that a finding of PQ or Fit was indicated. This combines with evidence from the VA Examination of Dr. Nakamura

to suggest that, while duty limiting with respect to worldwide assign ability, the arthritic and cutaneous manifestations of the Petitioner's psoriatic condition were insufficient to render him Unfit for Continued Naval Service.

5. Hence, in conclusion:

a. As contended in subject BCNR application, the 19 July 2001 IPEB should have made a determination of Fit vs. Unfit vice PQ vs. NPQ for Continued Naval Reserve Service; however,

b. In the absence of evidence of significant impairment of ACDU performance from Service Records, Medical Records, or additional VA evidence, Petitioner would appear to have been Fit for Continued Naval Reserve Service at the time of his 1 March 2002 discharge; and it is recommended that Petitioner's record be amended to reflect same. It is noted that Military PEB determinations are performance based requiring evidence that a given medical condition renders a service member Unfit while VA Rating Decisions are largely based on the manifestations of medical conditions without a requirement that such render the veteran Unfit for Continued Service.

M. L. CULVER

**William J. Holmes**
*Attorney at Law*
6064 Indian River Road
Suite 203
Virginia Beach, Virginia 23464
(757) 420-9321 Off
(757) 420-4169 Fax

June 2, 2005

From: William J. Holmes, Civilian Defense Counsel
To: Board for Correction of Naval Records

Subj: SUPPLEMENTAL ARGUMENT IN SUPPORT OF APPLICATION FOR CORRECTION OF NAVAL RECORDS; CASE OF CDR WILLIAM R. HAVENS, USNR

Encl:
(1) DD-214
(2) Medical Exam record of 27 June 1996
(3) Medical Exam record of 9 September 1996
(4) Medical Exam record of 21 October 2000
(5) CO, NARC San Jose ltr N91/407 dtd 1 Dec 00
(6) NAVPERSCOM ltr NOEREQ dtd 12 Apr 01
(7) CO, NARC San Jose ltr N23/0115 dtd 4 Apr 01
(8) CDR Wm R. Havens ltr 6110 dtd 10 Mar 01
(9) Findings of PEB dtd 19 Jul 2001
(10) PEB ltr to CDR Havens, dated 4 SEP 2001
(11) President, PEB ltr 1850 dtd 2 Jan 02

1. On 21 February 2005, William R. Havens submitted an Application for Correction of Records to this Board. Since that time, Mr. Havens has retained the undersigned counsel to represent him in this regard. Accordingly, this is submitted as a supplement to his petition and application and it is respectfully requested that the Board consider such in reaching their decision in this case.

2. The issue in the instant case is a relatively simple one: that CDR Havens was improperly transferred to Retired Reserve status in March 2002 when he suffered from medical conditions which were incurred while on continuous active duty for some sixteen (16) years. As such, he should have been evaluated by the PEB with a line of duty determination for these conditions and retirement in accordance with 10 U.S. Code section 1201.

3. LCDR Havens was on continuous active duty from 22 March 1980 through 31 August 1996. Enclosure (1). In 1995, LCDR Havens became ill and was

diagnosed with and treated for psoriasis and psoriatic arthritis by Dr. Craig at the Navy Medical Clinic, Treasure Island, California. Enclosure (2). In 1996, LCDR Havens transferred to the inactive reserves without any break in service. His active duty discharge physical of June 1996 and his reserve affiliation physical in September 1996 both determined him to be fit for duty and were both presented to Commander Naval Reserve Force [CNRF] for review prior to his acceptance and accession. Enclosures (2) and (3). Accordingly, LCDR Havens was accepted and transferred to the reserve center. In October 1997, he was promoted to CDR/O-5. He served in various reserve centers over the next several years and was repeatedly determined to be fit for duty and transfer. In fact, on October 21, 2000, CDR Havens was medically evaluated and deemed to be physically qualified to perform all duties of his rank at sea or on foreign shores. Enclosure (4). As such, on 1 December 2000, it was determined by the Commanding Officer, Naval Air Reserve Center San Jose, California, that CDR Havens was fit for retention in the Naval Reserves. Enclosure (5). All of this information was then submitted to PERS-49 as a part of CDR Havens retention package. However, on 12 April 2001, this matter was referred to a Physical Evaluation Board [PEB] for a fitness for duty/qualification for retention. This request specifically noted, as had the previous physical evaluation, that CDR Havens had a previous condition of psoriatic arthritis prior to his release from active duty. Enclosures (6), (7) and (8). Despite this seemingly undisputed fact, on 19 July 2001, the PEB found that CDR Havens was not physically qualified to continue in his reserve status and that his disability was "not a proximate result of performing military duty." Enclosure (9). CDR Havens filed an appeal of this decision and requested a formal PEB hearing, but that hearing refused to make any line of duty determination and simply declared him not physically qualified for service in the reserves. Enclosures (10) and (11). Accordingly, CDR Havens was separated from the reserves by reason of physical disability and transferred to Retired Reserve status.

4. It is this decision of the PEB which forms the fundamental error which is the basis of this petition. The PEB used an improper and incorrect standard in resolving this case and failed to follow the explicit legal standard governing this situation. 10 U.S.C. section 2019b specifically states that "A Reserve component member shall be adjudicated under the statutory provisions applicable to his or her duty status time at the time of onset or aggravation of the condition for which the member is determined Unfit." This same standard is also set forth in DOD Instruction 1332.38. Pursuant to section 2038 of Title 10, United States Code, CDR Havens' condition was incurred in 1995 when he was on active duty and had continuously been in this status for many years. It is undisputed and uncontroverted that LCDR Havens was diagnosed with and treated for psoriasis and psoriatic arthritis in 1995 when he was on active duty as these very diagnoses were included in his military medical records and noted on his page 13. As such, a Line of Duty determination was required to be made. Such a finding is mandatory because such determinations are required to determine eligibility for retirement and severance pay benefits for members of the naval service. JAGMAN sections 0222, 0231 and 0232. The Commander, Navy Personnel Command made such a Line of Duty determination by his referral to the PEB for a finding of fit/unfit pursuant to SECNAVINST 1850.4D for a condition which existed prior to release from active duty.

See, Enclosure (6). This determination must be deemed to be binding on the PEB. JAGMAN 0222b, SECNAVINST 1850.4D section 3410.

5. As previously noted, LCDR Havens incurred and suffered from these conditions while on active duty in 1995. Thus, the evidence of record clearly and indisputable demonstrates that these conditions were incurred while on active duty. A condition incurred on active duty is presumed by law to be incurred in the line of duty unless that presumption is overcome with clear and convincing evidence that "the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence." JAGMAN sections 0221 and 0222. In this case, there is absolutely no evidence whatsoever which would overcome this presumption and, quite to the contrary, the medical evidence clearly demonstrates that LCDR Havens incurred these conditions in the line of duty. As such, he is entitled to receive benefits under 10 U.S.C. section 1201. This section states that a servicemember who is determined to be unfit for duty because of physical disability incurred while entitled to basic pay may be retired. This section specifically applies to CDR Havens despite his status as member of the Naval Reserve because at the time his conditions were incurred, he had been entitled to basic pay and ordered to active duty for a period of more than thirty (30) days. 10 U.S.C. section 1201(c)(2). Since his condition was incurred while on active duty for more than 30 days and must be deemed to be in the line of duty as a matter of law, CDR Havens must be retired under 10 U.S.C. section 1201with the appropriate level of disability as determined by the rating schedule in use by the Department of Veterans' Affairs.

6. However, this result which is mandated by law did not occur in the instant case because the PEB employed the wrong and incorrect legal standards. As previously noted, the PEB summarily concluded that that CDR Havens was not physically qualified to continue in his reserve status and that his disability was "not a proximate result of performing military duty." Enclosure (9). This determination is wrong for several reasons. Initially, the evidence clearly shows that CDR Havens' "history of psoriatic arthritis" was incurred in 1995 when he was diagnosed with and treated for psoriasis and psoriatic arthritis by Dr. Craig at the Navy Medical Clinic, Treasure Island, California while he had been serving on active duty for some 16 years. Enclosure (2). There was and is no evidence which rebuts this evidence or demonstrates that it was incorrect in any way. Rather, all of the evidence supports this very conclusion. Thus, there was absolutely no evidentiary basis for the PEB to conclude that the disability was not a proximate result of performing military duty. Quite to the contrary, the law expressly presumes this disability and conditions to have been incurred in the line of duty and there is absolutely no evidence to rebut this mandated conclusion, especially in light of specific medical evidence of this condition having its onset while LCDR Havens was on active duty for an extended period of time. Thus, the PEB was factually wrong in reaching this decision.

7. The PEB also erred as a matter of law by wholly refusing to even allow or consider any evidence concerning when the condition as incurred and whether it was in the line of duty or not. As expressly stated in enclosure (10), the PEB in this instance

refused to address and evidence beyond the finding that CDR Havens was or was not physically qualified for retention in the reserves. By limiting its consideration to only this single issue, the PEB completely refused to discharge its obligations as required by law.

8. Because CDR Havens' disabling conditions were incurred while on active duty, the PEB was required to adjudicate his case based upon this active duty status rather than upon his subsequent reserve service. However, they failed to do that in direct violation of various explicit statutes and regulations. See, 10 U.S.C. sections 2019b and 2038; DOD Instruction 1332.38. Because of this fundamental and inexcusable error, the mistakes of the PEB continued to compound. The PEB erroneously processed CDR Havens' case under section 1204 of Title 10 rather than pursuant to 10 U.S.C. section 1201 as should have occurred. Since his condition was incurred while he was entitled to and receiving basic pay pursuant to active duty orders for a period of more than thirty (30) days, CDR Havens was required to have been retired under 10 U.S.C. section 1201 with the appropriate level of disability as determined by the rating schedule in use by the Department of Veterans' Affairs. The use of section 1204 by the PEB was patently improper because this section was wholly inapplicable by its own terms because CDR Havens was on active duty for more than 30 days and was subject to retirement in accordance with section 1201. Thus, the wrong statute was mistakenly and incorrectly used by the PEB. The PEB also refused to make an explicit Line of Duty determination as required or even to take any evidence on this critical and essential issue. See, JAGMAN sections 0222, 0231 and 0232 and SECNAVINST 1950.4D. Additionally, by refusing to allow CDR Havens to even have the opportunity to present evidence or even to consider whether the disabling conditions were incurred on active duty or not, the PEB violated the United States Code as well as DOD Instruction 1332.38 by denying CDR Havens any opportunity at the formal hearing to address the critical and essential issue which directly affected his eligibility for retirement benefits under Chapter 10 of Title 10. Finally, by announcing a decision based on "proximate result" rather than the required line of duty determination, the PEB erroneously failed to use or consider the explicit legal standards mandated by SECNAVINST 1850.4D and DOD Instruction 1332.38.

9. As a direct result of these legal and factual errors, CDR Havens was separated from the reserves by reason of physical disability and transferred to Retired Reserve status when he was required to have been medically retired pursuant to 10 U.S.C. 1201 and afforded the appropriate disability rating because his disabling conditions were incurred while he was serving on active duty for more than 30 days. In order to correct this legally incorrect and erroneous result which has caused a blatant miscarriage of justice, it is respectfully requested that this Board correct this mistake by announcing a direct order and decree that CDR Havens should be granted retirement in accordance with Title 10, U.S.C. section 1201 retroactive to 1 March 2002, the date when he was improperly transferred to the Ready Reserves rather than properly being retired. This is the result which should have been announced previously and such an order now would be the best means of putting CDR Havens in the position where he should have been all along. At a bare minimum, this Board must at least declare the conclusions and findings of the previous PEB to be factually and legally incorrect and therefore, null and

void, and to order a new PEB hearing to be conducted in accordance with the applicable law.

10. Wherefore, for all the reasons discussed above, it is submitted that corrective action by this Board is required both factually and as a matter of law. The PEB which was held in 2001 failed to follow the correct legal standard as required by the United States Code and various DOD and SECNAV instructions. Based upon this failure to correctly apply the law, an improper and unwarranted conclusion was mistakenly reached. Because CDR Havens' medical condition was incurred and began while he served on active duty for an extended period of time, some sixteen (16) years, he was required to be processed under the standards for evaluation for active duty servicemembers and eligible for retirement under 10 U.S.C. section 1201. However, the PEB erroneously treated him as a reservist who had not served on active duty and ordered him into Retired Reserve status pursuant to section 1204. Such a result was both legally and factually incorrect and requires corrective action from this Board to grant retirement to CDR Havens pursuant to 10 U.S.C. section 1201 retroactive to 1 March 2002, the date when he was improperly transferred to the Ready Reserves rather than properly being retired.

Respectfully submitted,

William J. Holmes
Counsel for CDR William R. Havens



00022

an order now would be the best means of putting CDR Havens in the position where he should have been all along. At a bare minimum, this Board must at least declare the conclusions and findings of the previous PEB to be factually and legally incorrect and therefore, null and void, and to order a new PEB hearing to be conducted in accordance with the applicable law.

8. Wherefore, for all the reasons discussed above, it is submitted that corrective action by this Board is required both factually and as a matter of law. The PEB which was held in 2001 failed to follow the correct legal standard as required by the United States Code and various DOD and SECNAV instructions, and the Navy has expressly conceded this point in their advisory opinion. Based upon this failure to correctly apply the law, an improper and unwarranted conclusion was mistakenly reached. Because CDR Havens' medical condition was incurred and began while he served on active duty for an extended period of time, some sixteen (16) years, he was required to be processed under the standards for evaluation for active duty service members and eligible for retirement under 10 U.S.C. section 1201. However, the PEB erroneously treated him as a reservist who had not served on active duty and ordered him into Retired Reserve status pursuant to section 1204. Such a result was both legally and factually incorrect and requires corrective action from this Board to grant retirement to CDR Havens pursuant to 10 U.S.C. section 1201 retroactive to 1 March 2002, the date when he was improperly transferred to the Ready Reserves rather than properly being retired.

Respectfully submitted,

William J. Holmes
Counsel for CDR William R. Havens

6

**APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552**
*(Please read instructions on reverse side BEFORE completing this application.)*

*Form Approved OMB No. 0704-0003 Expires May 31, 2006*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of informati... collection of information, including suggestions for reducing the burden, to the Department of Defense, Execu... be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for fa... valid OMB control number.

PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE OR... ...RIATE ADDRESS ON THE BACK OF THIS PAGE.

Havens, William R.

*01562-05*

PRIVACY ACT S...

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

DISCLOSURE: Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

**1. APPLICANT DATA** *(The person whose record you are requesting to be corrected.)*

a. BRANCH OF SERVICE *(X one)*: [ ] ARMY [X] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD

b. NAME *(Print - Last, First, Middle Initial)*: HAVENS WILLIAM R.

c. PRESENT OR LAST PAY GRADE: CDR / O5

d. SERVICE NUMBER *(If applicable)*:

e. SSN:

**2. PRESENT STATUS WITH RESPECT TO THE ARMED SERVICES** *(Active Duty, Reserve, National Guard, Retired, Discharged, Deceased)*: RETIRED

**3. TYPE OF DISCHARGE** *(If by court-martial, state the type of court.)*: HONORABLE

**4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY** *(YYYYMMDD)*: 1996-08-31

**5. I REQUEST THE FOLLOWING ERROR OR INJUSTICE IN THE RECORD BE CORRECTED:** *(Entry required)*
RETIRED BY REASON OF PHYSICAL DISABILITY ON 1 MAR 2002 WITH A PROXIMATE FINDING WHICH SHOULD HAVE BEEN LINE OF DUTY FINDING.

**6. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST FOR THE FOLLOWING REASONS:** *(Entry required)*
PHYSICAL DISABILITY WAS INCURRED WHILE ON ACTIVE DUTY OVER 30 DAYS & DID NOT BECOME AGGRAVATED OR MORE SEVERE WHILE IN A NON-DUTY STATUS. PLS. SEE ATTACHED.

**7. ORGANIZATION AND APPROXIMATE DATE** *(YYYYMMDD)* **AT THE TIME THE ALLEGED ERROR OR INJUSTICE IN THE RECORD OCCURRED** *(Entry required)*: 2002-03-01 PHYSICAL EVALUATION BOARD - PEB

**8. DISCOVERY OF ALLEGED ERROR OR INJUSTICE**

a. DATE OF DISCOVERY *(YYYYMMDD)*: 2002-03-01

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THE APPLICATION.: N/A

**9. IN SUPPORT OF THIS APPLICATION, I SUBMIT AS EVIDENCE THE FOLLOWING ATTACHED DOCUMENTS:** *(If military documents or medical records are pertinent to your case, please send copies. If Veterans Affairs records are pertinent, give regional office location and claim number.)*
PLS. SEE ATTACHED DOCUMENTS

**10. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** *(At no expense to the Government) (X one)*: [X] YES. THE BOARD WILL DETERMINE IF WARRANTED. [ ] NO. CONSIDER MY APPLICATION BASED ON RECORDS AND EVIDENCE.

**11.a. COUNSEL** *(If any)* **NAME** *(Last, First, Middle Initial)* **and ADDRESS** *(Include ZIP Code)*:
HOLMES, WILLIAM J.
6064 INDIAN RIVER RD.
VIRGINIA BEACH, VA 23464

b. TELEPHONE *(Include Area Code)*: 757-420-9321

c. E-MAIL ADDRESS: WJHOLMESMILLAW@EROLS.COM

d. FAX NUMBER *(Include Area Code)*: 757-420-0284

**12. APPLICANT MUST SIGN IN ITEM 15 BELOW. If the record in question is that of a deceased or incompetent person, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY THE APPLICATION. If the application is signed by other than the applicant, indicate the name** *(print)* ______ **and relationship by marking one box below.**

[ ] SPOUSE [ ] WIDOW [ ] WIDOWER [ ] NEXT OF KIN [ ] LEGAL REPRESENTATIVE [ ] OTHER *(Specify)*

**13.a. COMPLETE CURRENT ADDRESS** *(Include ZIP Code)* **OF APPLICANT OR PERSON IN ITEM 12 ABOVE** *(Forward notification of all changes of address.)*

b. TELEPHONE *(Include Area Code)*

c. E-MAIL ADDRESS

d. FAX NUMBER *(Include Area Code)*

**14. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sections 287 and 1001, provide that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

CASE NUMBER *(Do not write in this space.)*: FEB 23 2005

**15. SIGNATURE** *(Applicant must sign here.)*: William R Havens

**16. DATE SIGNED** *(YYYYMMDD)*: 2005-02-21

**DD FORM 149, MAY 2003** PREVIOUS EDITION IS OBSOLETE.

# Fact

1. I was on active duty from 22 March 1980 to 31 August 1996 without any break in service.
Evidence that supports this is my DD-214

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD. SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| | | |
|---|---|---|
| 1. NAME (Last, First, Middle)<br>HAVENS, WILLIAM RICHARD | 2. DEPARTMENT, COMPONENT AND BRANCH<br>NAVY - USNR | 3. SOCIAL SECURITY NO. |
| 4.a GRADE, RATE OR RANK<br>LCDR | 4.b. PAY GRADE<br>04 | 5. DATE OF BIRTH (YYMMDD) |
| 6. RESERVE OBLIG. TERM. DATE | Year NA / Month NA / Day NA | |
| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY<br>SCOTTSVILLE NY | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known)<br>SCOTTSVILLE NY | |
| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND<br>NRRC TREASURE ISLAND SF CA | 8.b. STATION WHERE SEPARATED<br>PERSUPPDET TREASURE ISLAND SF CA | |
| 9. COMMAND TO WHICH TRANSFERRED<br>NRPC NEW ORLEANS LA 70149 | 10. SGLI COVERAGE ☐ None<br>Amount: $ 200,000 | |

11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)

7976-SHIP REPAIR OFFFICER, 3YRS; 7930-SHIP ELECTRICAL REPAIR OFFICER, 3YRS; 9282-SHIP ELECTRONIC WARFARE OFFICER, 2YRS; 9283-SHIP'S ELECTRONIC MATERIAL OFFICER, 2YRS; 9467-SHIPPING OPERATIONS OFFICER, 2YRS; 3015-MOBILIZATION AND SELECTION OFFICER, 5YRS; 9302-AUXILIARY MACHINERY OFFICER,

| 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|
| a. Date Entered AD This Period | 80 | MAR | 22 |
| b. Separation Date This Period | 96 | AUG | 31 |
| c. Net Active Service This Period | 16 | 05 | 09 |
| d. Total Prior Active Service | 00 | 00 | 00 |
| e. Total Prior Inactive Service | 00 | 00 | 00 |
| f. Foreign Service | 01 | 06 | 00 |
| g. Sea Service | 06 | 01 | 14 |
| h. Effective Date of Pay Grade | 90 | AUG | 01 |

13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)

NATIONAL DEFENSE SERVICE MEDAL; NAVY COMMENDATION MEDAL(2); NAVY ACHIEVEMENT MEDAL(2); SEA SERVICE DEPLOYMENT RIBBON(6); SOUTHWEST ASIA SERIVCE MEDAL; KUWAIT LIBERATION MEDAL(KLMK); MERITORIOUS UNIT COMMENDATION.

14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed)

| | | | | | | |
|---|---|---|---|---|---|---|
| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No X | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes X | No | 16. DAYS ACCRUED LEAVE PAID 60.0 |

17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION X Yes ☐ No

18. REMARKS

SUBJECT TO ACTIVE DUTY RECALL AND/OR ANNUAL SCREENING
THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPUTER MATCHING WITHIN THE DEPARTMENT OF DEFENSE OR WITH OTHER AFFECTED FEDERAL OR NON-FEDERAL AGENCY FOR VERIFICATION PURPOSES AND TO DETERMINE ELIBILITY FOR, AND/OR CONTINUED COMPLIANCE WITH, THE REQUIREMENTS OF A FEDERAL BENEFIT PROGRAM.
DATE DETACH SEPARATION ACTIVITY: 23AUG96 08DAYS TRAVEL TIME.
AUTHORIZED SEPARATION PAYMENT 80,225.64 DISBURSING CODE 6133.
CONT BLK 11: 2YRS; 9308-DAMAGE CONTROL ASSISTANT, 3YRS; 9348-REPAIR DIVISION OFFICER, 3YRS; 9421-COMMANDER/COMMANING OFFICER SHORE ACTIVITY, 3YRS; 9436-EXECUTIVE OFFICER, SHORE ACTIVITY, 2YRS.

| | |
|---|---|
| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address - include Zip Code)<br>HUONG-CAN THI HAVENS |
| 20. MEMBER REQUESTS COPY 6 BE SENT TO CA DIR. OF VET AFFAIRS X Yes ☐ No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature)<br>B [signature] PERSRVDIROIC |
| 21. SIGNATURE OF MEMBER BEING SEPARATED<br>[signature] William R Havens | |

DD Form 214, NOV 88 S/N 0102-LF-006-5500 Previous editions are obsolete.

MEMBER - 1

# Fact

2. Psoriatic Arthritis was diagnosed and treated August 1995 while I was on active duty.

Evidence that supports this is

a. Report of Medical Exam dated 27 June 1996 completed while on active duty.

b. Report of Medical Exam dated 9 September 1996 reserve affiliation physical.

c. Report of Medical Exam date 21 October 2000 as part of NPQ package for determination of PQ or NPQ status by BUMED.

| YES | NO | CHECK EACH ITEM YES OR NO. EVERY ITEM CHECKED YES MUST BE FULLY EXPLAINED IN BLANK SPACE ON RIGHT |
|---|---|---|
| | X | 15. Have you been refused employment or been unable to hold a job or stay in school because of: A. Sensitivity to chemicals, dust, sunlight, etc. |
| | | B. Inability to perform certain motions. |
| | | C. Inability to assume certain positions. |
| | | D. Other medical reasons *(If yes, give reasons.)* |
| | X | 16. Have you ever been treated for a mental condition? *(If yes, specify when, where, and give details).* |
| | X | 17. Have you ever been denied life insurance? *(If yes, state reason and give details.)* |
| | X | 18. Have you had, or have you been advised to have, any operations? *(If yes, describe and give age at which occurred.)* |
| | X | 19. Have you ever been a patient in any type of hospitals? *(If yes, specify when, where, why, and name of doctor and complete address of hospital.)* |
| | X | 20. Have you ever had any illness or injury other than those already noted? *(If yes, specify when, where, and give details.)* |
| | X | 21. Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses? *(If yes, give complete address of doctor, hospital, clinic, and details.)* |
| | X | 22. Have you ever been rejected for military service because of physical, mental, or other reasons? *(If yes, give date and reason for rejection.)* |
| | X | 23. Have you ever been discharged from military service because of physical, mental, or other reasons? *(If yes, give date, reason, and type of discharge: whether honorable, other than honorable, for unfitness or unsuitability.)* |
| | X | 24. Have you ever received, is there pending, or have you applied for pension or compensation for existing disability? *(If yes, specify what kind, granted by whom, and what amount, when, why.)* |

**I certify that I have reviewed the foregoing information supplied by me and that it is true and complete to the best of my knowledge.**
**I authorize any of the doctors, hospitals, or clinics mentioned above to furnish the Government a complete transcript of my medical record for purposes of processing my application for this employment or service.**

| TYPED OR PRINTED NAME OF EXAMINEE | SIGNATURE |
|---|---|
| WILLIAM R HAVENS | [signature] |

**NOTE: HAND TO THE DOCTOR OR NURSE, OR IF MAILED MARK ENVELOPE "TO BE OPENED BY MEDICAL OFFICER ONLY."**
**25. Physician's summary and elaboration of all pertinent data** ***(Physician shall comment on all positive answers in items 9 through 24. Physician may develop by interview any additional medical history he deems important, and record any significant findings here.)***

H/O Psoriatic Arthritis - Sx's developed 8/95 - extensive workup including Skin Bx indicated psoriasis with arthritic component. Has Rheumatology consult pending - Has reduced exercise tolerance, chronic pain in digits - NCD

Motion sickness c̄ extreme weather conditions; [illegible] Dramamine, etc NCD

| TYPED OR PRINTED NAME OF PHYSICIAN OR EXAMINER | DATE | SIGNATURE | NUMBER OF ATTACHED SHEETS |
|---|---|---|---|
| K. L. CRAIG<br>LT MC USNR | 4/27/96 | [signature] | |

REVERSE OF STAND

*U.S. GPO: 1993-300-892/60142

| YES | NO | CHECK EACH ITEM YES OR NO. EVERY ITEM CHECKED YES MUST BE FULLY EXPLAINED IN BLANK SPACE ON RIGHT | |
|---|---|---|---|
| | | 15. Have you been refused employment or been unable to hold a job or stay in school because of: | |
| | ✓ | A. Sensitivity to chemicals, dust, sunlight, etc. | |
| | | B. Inability to perform certain motions. | |
| | | C. Inability to assume certain positions. | |
| | | D. Other medical reasons (If yes, give reasons.) | |
| | ✓ | 16. Have you ever been treated for a mental condition? (If yes, specify when, where, and give details). | |
| | ✓ | 17. Have you ever been denied life insurance? (If yes, state reason and give details.) | |
| | ✓ | 18. Have you had, or have you been advised to have, any operations? (If yes, describe and give age at which occurred.) | |
| | ✓ | 19. Have you ever been a patient in any type of hospitals? (If yes, specify when, where, why, and name of doctor and complete address of hospital.) | |
| | ✓ | 20. Have you ever had any illness or injury other than those already noted? (If yes, specify when, where, and give details.) | |
| | ✓ | 21. Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses? (If yes, give complete address of doctor, hospital, clinic, and details.) | |
| | ✓ | 22. Have you ever been rejected for military service because of physical, mental, or other reasons? (If yes, give date and reason for rejection.) | |
| | ✓ | 23. Have you ever been discharged from military service because of physical, mental, or other reasons? (If yes, give date, reason, and type of discharge: whether honorable, other than honorable, for unfitness or unsuitability.) | |
| | ✓ | 24. Have you ever received, is there pending, or have you applied for pension or compensation for existing disability? (If yes, specify what kind, granted by whom, and what amount, when, why.) | |

**I certify that I have reviewed the foregoing information supplied by me and that it is true and complete to the best of my knowledge.**
**I authorize any of the doctors, hospitals, or clinics mentioned above to furnish the Government a complete transcript of my medical record for purposes of processing my application for this employment or service.**

| TYPED OR PRINTED NAME OF EXAMINEE | SIGNATURE |
|---|---|
| WILLIAM R HAVENS | [signature] |

**NOTE: HAND TO THE DOCTOR OR NURSE, OR IF MAILED MARK ENVELOPE "TO BE OPENED BY MEDICAL OFFICER ONLY."**
**25. Physician's summary and elaboration of all pertinent data (*Physician shall comment on all positive answers in items 9 through 24. Physician may develop by interview any additional medical history he deems important, and record any significant findings here.*)**

#8. PSORIATIC ARTHRITIS ; SVCMBR WAS DIAGNOSED / TREATED FOR THIS CONDITION DURING 1995 - 96 AND WAS FOUND FIT FOR FULL DUTY AND QUALIFIED FOR SEPARATION / RETIREMENT / TRANSFER TO FLEET RESERVE DURING RETIREMENT PHYSICAL ON 27JUN96.

| TYPED OR PRINTED NAME OF PHYSICIAN OR EXAMINER | DATE | SIGNATURE | NUMBER OF ATTACHED SHEETS |
|---|---|---|---|
| K. L. CRAIG LT MC USNR | 09SEP96 | [signature] | |

| YES | NO | CHECK EACH ITEM YES OR NO. EVERY ITEM CHECKED YES MUST BE FULLY EXPLAINED IN BLANK SPACE ON RIGHT | |
|---|---|---|---|
| | | 15. Have you been refused employment or been unable to hold a job or stay in school because of: | |
| | X | A. Sensitivity to chemicals, dust, sunlight, etc. | - Psoriatic Arthritis |
| | X | B. Inability to perform certain motions. | - Psoriasis |
| | X | C. Inability to assume certain positions. | |
| | X | D. Other medical reasons (*If yes, give reasons.*) | - Ongoing flu like attacks 1-3 months (Vomit, Fever, Headache) |
| | X | 16. Have you ever been treated for a mental condition? (*If yes, specify when, where, and give details*). | |
| | X | 17. Have you ever been denied life insurance? (*If yes, state reason and give details.*) | |
| | X | 18. Have you had, or have you been advised to have, any operations? (*If yes, describe and give age at which occurred.*) | |
| | X | 19. Have you ever been a patient in any type of hospitals? (*If yes, specify when, where, why, and name of doctor and complete address of hospital.*) | |
| | X | 20. Have you ever had any illness or injury other than those already noted? (*If yes, specify when, where, and give details.*) | |
| | X | 21. Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses? (*If yes, give complete address of doctor, hospital, clinic, and details.*) | |
| | X | 22. Have you ever been rejected for military service because of physical, mental, or other reasons? (*If yes, give date and reason for rejection.*) | |
| | X | 23. Have you ever been discharged from military service because of physical, mental, or other reasons? (*If yes, give date, reason, and type of discharge: whether honorable, other than honorable, for unfitness or unsuitability.*) | |
| X | | 24. Have you ever received, is there pending, or have you applied for pension or compensation for existing disability? (*If yes, specify what kind, granted by whom, and what amount, when, why.*) | #24 VA 40% Service Related |

**I certify that I have reviewed the foregoing information supplied by me and that it is true and complete to the best of my knowledge.**
**I authorize any of the doctors, hospitals, or clinics mentioned above to furnish the Government a complete transcript of my medical record for purposes of processing my application for this employment or service.**

| TYPED OR PRINTED NAME OF EXAMINEE (Full Name) | SIGNATURE (Normal) |
|---|---|
| William Richard Havens | William R Havens |

**NOTE: HAND TO THE DOCTOR OR NURSE, OR IF MAILED MARK ENVELOPE "TO BE OPENED BY MEDICAL OFFICER ONLY."**
**25. Physician's summary and elaboration of all pertinent data** (*Physician shall comment on all positive answers in items 9 through 24. Physician may develop by interview any additional medical history he deems important, and record any significant findings here.*)

Flu like symptoms q 3 mos since '95
Psoriasis + Psoriatic arthritis since 95

| TYPED OR PRINTED NAME OF PHYSICIAN OR EXAMINER | DATE | SIGNATURE | NUMBER OF ATTACHED SHEETS |
|---|---|---|---|
| G J Rumore Capt MC | 31 Oct 00 | [signature] | |

REVERSE OF STANDARD FORM 93

☆U.S. GPO:1994-383-917/09046

# **Fact**

3. From 10 February 1986 to 31 August 1996 my duty status was as a member of Full-Time Support (FTS) personnel in the Naval Reserve under the category of "Active Guard and Reserve" (AGR). Therefore "a member of a Reserve component on active duty for a period of 180 consecutive days or more" as a "TAR".

This supported by;

a. My acceptance notification of transfer to TAR program dated 10 February 1986.

b. SECNAVINST 1200.1A reference that defines FTS, AGR, and TAR status. This instruction was applicable at time of processing.

10 Feb 86

From: LT William R. Havens, USNR,
To: Commander, Naval Military Personnel Command (NMPC-4417)
Via: Commanding Officer, USS KISKA (AE-35)

Subj: TRANSFER TO THE TAR PROGRAM

Ref: (a) COMNAVMILPERSCOM ltr 1212 NMPC-4417 of 31 Jan 86
(b) MILPERSMAN 1020205

1. Having been advised by reference (a) of my nomination for transfer to the TAR Program:

I accept transfer to the TAR Program and hereby resign my regular commission contingent upon appointment as a Reserve Officer in the TAR Program. I understand that the fourth digit of my designator will be changed to a "7", in accordance with reference (b), which constitutes my transfer to the TAR Program.

William R. Havens
William R. HAVENS

# Fact

4. I was on "active duty for a period of more than 30 days" when my Psoriatic Arthritis was diagnosed in August 1995.

a. Supported by BUPERS ORDER 0684 detach in May 1994 from NAVRESREDCOMREG TEN report NLT JUNE 1994 to NAVMARCORESREDCEN Treasure Island, CA. with PRD of 1997.

b. These orders "do not specify a period of 30 days or less".

UUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUU
U U N C L A S S I F I E D U
UUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUU

ADMINISTRATIVE MESSAGE

ROUTINE

R 091315Z MAR 94 ZYB

FM CHNAVPERS WASHINGTON DC//PERS4417//

TO NAVRESREDCOM REG TEN NEW ORLEANS LA//JJJ//
NAVMARCORESREDCEN TREASURE ISLAND CA//JJJ//
PERSUPPDET TREASURE ISLAND CA //JJJ//
PERSUPPDET NAVSUPPACT NEW ORLEANS LA //JJJ//

BT
UNCLAS //N01321// SECTION 01 OF 02

MSGID/GENADMIN/CHNAVPERS//

SUBJ/BUPERS ORDER//

RMKS/
BUPERS ORDER: 0684 (PERS-44170)
OFFICIAL CHANGE DUTY ORDERS FOR
LCDR WILLIAM RICHARD HAVENS, USNR
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
IN CARRYING OUT/PROCESSING THESE ORDERS, BOTH PARTS ONE AND TWO
MUST BE READ AND LISTED INSTRUCTIONS COMPLIED WITH.
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

P A R T O N E

-------- DETACHING ACTIVITY (M) -------
WHEN DIRECTED BY REPORTING SENIOR, DETACH IN MAY 94 EDD: MAY 94
FROM NAVRESREDCOMREG 10 NOLA UIC: 68307
PERMANENT DUTY STATION LA, NEW ORLEANS
FROM DUTY ACC: 100
PERSONNEL ACCOUNTING SUPPORT: PERSUPPDET NAVSUPPACT NOLA
UIC: 43105

-------- ULTIMATE ACTIVITY (M) -------
REPORT NOT LATER THAN JUN 94 EDA: JUN 94
TO NAVMARCORESREDCEN TREASURE ISL UIC: 62115
PERMANENT DUTY STATION CA, TREASURE ISLAND
FOR DUTY ACC: 100
SSC: 00200
PRD: 9706
PERSONNEL ACCOUNTING SUPPORT: PERSUPPDET TREASURE ISLAND
UIC: 43103

REPORT AS EXECUTIVE OFFICER.

11 Mar 94
DATE CODE INITIALS

RTD:000-000/COPIES:

006502/03171/ /070 1 ARA 0025 070/13:32Z 091315Z MAR 94
CSN:AJAF0025 070/13:33Z CHNAVPERS WASHINGTON DC
PSN-006502 /

1537 COPIES

UUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUUU

# Fact

5. From discharge from active duty to being found "unfit" for Psoriatic Arthritis by BUMED January 2001 I did not have "an increase in impairment while in the reserves".
This is support by;

a. Dr. Craig's letter dated 26 September 2001 that states my condition of Psoriatic Arthritis had not manifestly changed from 1996.

b. Report of Medical Exam SF88 completed 21 October 2000 stating "Physically Qualified" for duty.

c. Lack of any documentation to show an increase or aggravation from 31 August 1996 to 11 January 2001 date of BUMEDS finding.

d. Transfer orders from NRC Sacramento to NARC San Jose date 10 May 2000 declaring me "PQ" for transfer.

e. Indirect proof is an attempt to show aggravation through fraud. No need to do fraud if documents existed that could show aggravation.

Sutter Gould
Medical Foundation

A Sutter Health
Affiliate

1011 Sylvan Ave., Ste. C
Modesto, CA 95350
(209) 550-4780

26 Sep 01

Department of the Navy
Board for the Correction of Naval Records
2 Navy Annex
Washington DC 20370-5100

Re: William R. Havens Docket No. 7277-99

Dear Sir or Madam:

I am a former active duty Navy general medical officer and was stationed at the Branch medical Clinic, Treasure Island from 08/95 to 05/97. During this time I saw LCDR William R. Havens for a variety of medical complaints as well as performing his separation physical in 1996. His diagnosis of psoriatic arthritis had been clearly established prior to separation, and in discussion with my Officer in Charge, CDR Estellita Carandang, MC., USNR, it was decided not to request a medical board and that LCDR Havens was physically qualified for duty. I was recently contacted by now CDR Havens to comment on his being found not physically qualified for duty due to his diagnosis of psoriatic arthritis. After reviewing his medical record and the letter by Dr Mary Nakamura of the Arthritis Clinic at SFVAMC, I find no evidence that his disease has significantly progressed since the time I performed his separation physical in 1996. Instead I feel that at the time of his physical exam on 21 Oct 00 he was manifesting an exacerbation of his disease, which is both typical and expected of this disease, and is not representative of a worsening of his arthritis. The natural course of exacerbation and regression of symptoms in individuals with psoriatic arthritis was known at the time of his separation in 1996, and in my opinion if it is the position of BUMED that CDR Havens is not physically qualified for duty now, then he should have been found NPQ in 1996 and a medical board should have been requested at that time. Alternately, if he was physically qualified for active duty in 1996, then since his condition is not manifestly changed during the interim he should be found physically qualified now.

In summary CDR Havens has a diagnosis of psoriatic arthritis which is clearly documented as existing while on active duty, and which in my opinion upon review of his medical record has not progressed while he was in the reserves, and I feel his status in the reserves should be adjudicated under active duty provisions only.

Respectfully,

Kevin L. Craig, MD
LCDR, MC, USNR

**INACTIVE DUTY TRAINING ORDERS**
**TERMINATION/CANCELLATION/MODIFICATION**
CNAVRES 1321/2 (2-79) S/N 0117-LF-013-2110

S-3 16

From
NAVRESREDCOMREG
COMMANDING OFFICER ,Naval Air Reserve Point Mugu
NAS, NARU, NAF

Date
N7A
1300
4 May 00

To
CDR William R. Havens, USNR, /1115

References: (a) CNAVRES 1321/1 as appropriate w/mods

*Reference ( a ) Which Authorized Your Assignment To:*

NR VTU 2006 ☐ *In DP* ☒ *NP* *IS HEREBY:*

☐ *Terminated* ☐ *Cancelled* ____________ *for reason(s) indicated below*
*(effective date)*

☐ *Inability to Maintain Satisfactory Drill Attendance*
☐ *Failure to perform annual ACDUTRA*
☐ *Expiration of CO tenure*
☐ *Disapproval/expiration of waiver*
☐ *Officer's own Request (Indicate reason and future affiliation plans)*
☐

*Modified* 10 May 00 *as indicated below:*
*(effective date)*

Report to Commanding Officer, NR VTU 8787 for inactive duty training in a non-pay status.

R. E. HANN
By direction

Copy to:
NPC (313C)
N&MCRC Sacramento
NAVAIRESCEN San Jose
NR VTU 2006
NR VTU 8787
Service record

U.S. Government Printing Office: 1988—505-807/[illegible] 2-1

000[illegible]7