**2033 Full And Fair Hearing**

A hearing held by a board, before which the Service member has the right to make a personal appearance with the assistance of counsel, and to present evidence in his or her behalf.

**2034 Guardian/Committee**

Person or persons appointed by a court of competent jurisdiction to act for a mentally incompetent member under limitations, if any, established by the court. Their actions are legally binding on the member.

**2035 Impairment Of Function**

Any disease or residual of an injury that results in a lessening or weakening of the capacity of the body or its parts to perform normally, according to accepted medical principles.

**2036 Inactive Duty Training (IDT)**

Duty prescribed for Reservists, other than active duty or full-time National Guard Duty, under 37 U.S.C. 206 or other provision of law. It does not include work or study in connection with a correspondence course of a Uniformed Service.

**2037 Incapacitation Board**

See paragraphs 2015 Competency Board, 2045 Mental Incompetence.

**2038 Incurred While Entitled To Receive Basic Pay**

a. "Incurred" refers to the date or time when a disease or injury is contracted or suffered, as distinguished from a later date, when the PEB determines that a member has become Unfit to continue naval service as a result of such disease or injury. Physical disability due to natural progression of disease or injury is "incurred" at the time the disease or injury causing the disability is contracted. When the increase in physical impairment during service is in excess of that due to natural progression of the disease or injury, the increase is due to aggravation by service.

b. "While entitled to receive basic pay" encompasses all types of duty which entitled the member concerned to receive active duty basic pay. It also includes any duty without pay which may be counted the same as duty with pay, such as reserve personnel drilling in non-pay billets. For purposes of administering disability benefit under 10 U.S.C., Chapter 61, midshipmen are not entitled to receipt of basic pay. In addition, members in an appellate or excess leave status are not entitled to receive basic pay. This definition shall not be construed to entitle any member not on active duty, who, at the time of separation from active duty was considered Fit to continue naval

service, to benefits under 10 U.S.C., Chapter 61, because of an increase in impairment occurring while the member was not entitled to basic pay.

**2039 Injury**

Damage or wound to the body, traumatic in origin.

**2040 Instrumentality Of War**

A vehicle, vessel, or device designed primarily for Military Service, and intended for use in such Service at the time of the occurrence of the injury. It also may be a vehicle, vessel, or device not designed primarily for Military Service if use of or occurrence involving such a vehicle, vessel, or device subjects the individual to a hazard peculiar to Military Service. This use or occurrence differs from the use or occurrence under similar circumstances in civilian pursuits. There must be a direct causal relationship between the use of the instrumentality of war and the disability, and the disability must be incurred incident to a hazard or risk of the service.

**2041 Line Of Duty Investigation.**

An inquiry used to determine whether an injury or disease of a member performing military duty was incurred in a duty status; if not in a duty status, whether it was aggravated by military duty; and whether incurrence or aggravation was due to the member's intentional misconduct or willful negligence.

**2042 Medical Evaluation Board (MEB)**

A body of physicians (or others specifically designated by CHBUMED) convened in accordance with reference (f), Chapter 18, to identify members whose physical and/or mental qualification to continue on full duty is in doubt or whose physical and/or mental limitations preclude their return to full duty within a reasonable period of time. They are convened to evaluate and report on the diagnosis; prognosis for return to full duty; plan for further treatment, rehabilitation, or convalescence; estimate of the length of further disability; and medical recommendation for disposition of such members.

**2043 Member**

Unless otherwise defined, a "member" may be a commissioned officer, commissioned warrant officer, warrant officer, aviation candidate or enlisted person of the regular or reserve forces, including a retired person of the naval service. The term "retired person" includes members of the Fleet Reserve and Fleet Marine Corps Reserve who are in receipt of retainer pay. Midshipmen of the Navy are not "members" (10 U.S.C. 5001).

a. "Navy" means the U.S. Navy. It includes the Regular Navy, the Fleet Reserve and the Naval Reserve.

DEPARTMENT OF THE NAVY
NAVAL COUNCIL OF PERSONNEL BOARDS
720 KENNON STREET SE STE 309
WASHINGTON NAVY YARD DC 20374-5023

IN REPLY REFER TO

5220
CORB:003
8 Jun 06

From: Director, Secretary of the Navy Council of Review Boards
To: Executive Director, Board for Correction of Naval Records

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF FORMER CDR WILLIAM R. HAVENS, USNR, RETIRED,

Ref: (a) Your ltr JRE:jdh Docket No: 01562-05 of 31 May 06
(b) CORB 5220:00s of 22 Mar 06
(c) DODI 1332.38

1. The petitioner's case was again reviewed following submission of his rebuttal to reference (b). In response, the below comments are provided.

2. As stated in reference (b), it is our continued opinion that petitioner should have received a "Fit/Unfit" vice "Physically Qualified/Not Physically Qualified" determination from the Physical Evaluation Board in Jul 2001. Our previous determination was not consistent with policy regarding the administrative processing of cases similar to petitioner's. That policy, in summary, allows the PEB to issue a Fit/Unfit determination when it can be established by the evidence of record that the member (who was previously on active duty either as a recalled reservist or active duty member) incurred a condition while on the previous period of active duty, that the condition was actually unfitting at the time of the member's release from active duty, or, that although not unfitting upon release, the condition was aggravated while on a subsequent reserve or active period of duty. This policy is consistent with guidance contained in reference (c) that provides for the rating of prior service impairments (section E3.P4.5.3) and for adjudicating reserve component member cases under the statutory provisions applicable to his or her duty status at the time of onset or aggravation of the condition (section E3.P4.3).

3. In petitioner's case, it was determined, having provided him the benefit of the doubt, that his condition, which was incurred while on active duty, was possibly aggravated while in a reserve status. However, although petitioner was entitled to a Fit/Unfit determination, a preponderance of the evidence clearly shows that his condition, although possibly aggravated, was not an unfitting condition at the time of his release from active duty or during his subsequent reserve period of service. As noted in reference (b), under the DoD Disability Evaluation System, the mere presence of a condition does not render an individual unfit for duty. There must also be a showing that he is unable to perform duties appropriate for his office, grade, rank, or rating. Such a finding could not be made in petitioner's case.

3. In conclusion, petitioner's request for disability retirement is not supported.

M. E. CULVER

**William J. Holmes**
*Attorney at Law*
6064 Indian River Road
Suite 203
Virginia Beach, Virginia 23464
(757) 420-9321 Off
(757) 420-4169 Fax

April 27, 2006

From: William J. Holmes, Civilian Defense Counsel
To: James R. Exnicios, Head, Disability Section
Board for Correction of Naval Records

Subj: RESPONSE TO ADVISORY OPINION;
CASE OF CDR WILLIAM R. HAVENS, USNR
BCNR Docket No. 01562-05

Encl: (1) Bureau of Medicine and Surgery ltr 610/252 dtd 11 Jan 2001
(2) Navy Personnel Command ltr 6110 dtd 25 Jan 01
(3) Naval Air Reserve Center, San Jose ltr 6120 dtd 7 Jul 01

1. In the instant case, the Navy Council of Review Boards has submitted an advisory opinion which was served on CDR Havens who forwarded it to me last week. This advisory opinion dated 22 March 2006, concedes that the Physical Evaluation Board [PEB] which heard CDR Havens' case used an improper and incorrect standard in resolving this case and failed to follow the explicit legal standard governing this situation. Thus, the Navy has admitted that CDR Havens should have been evaluated by the PEB with a line of duty determination for his medical conditions, the very point made in our petition to this Board..

2. It is submitted that such a response demands that the relief requested in the instant petition be granted. The Navy has conceded that the required and proper legal standards were not used by the PEB in 2001 and that it cannot be upheld. Since the PEB was not conducted in the appropriate manner in accordance with regulations and did not address the issue of fitness/unfitness for duty as it was required to do, there are only two possible remedies available: (1) to change the Not Physically Qualified finding of the PEB into an Unfit for Duty determination and then to retire CDR Havens in accordance with Title 10, U.S.C. section 1201 retroactive to 1 March 2002, the date when he was improperly transferred to the Ready Reserves rather than properly being retired; or (2) to direct that a new PEB be convened to make this determination after hearing all relevant evidence of CDR Haven's medical condition and the extent of his disability or impairment.

3. It is submitted that either of these two options are the only possible remedy for the incorrect and defective PEB. The PEB recognized that CDR Havens was not able to perform reserve duties and declared him not physically qualified for continued reserve status. Had they used the correct standard, it is likely that would have declared him unfit for duty based on the medical evidence of CDR Havens' conditions. CDR Havens had been ill and diagnosed with and treated for psoriasis and psoriatic arthritis by Dr. Craig at the Navy Medical Clinic, Treasure Island, California since 1995 while on active duty. This condition did not go away but persists to this day. In fact, it has progressed such that the Veteran's Administration has awarded him 100% service connected disability for these conditions. Even in 2001, these conditions substantially affected CDR Havens' ability to perform his military duties. On 11 January 2001, the Bureau of Medicine and Surgery assigned CDR Havens a physical risk classification of "5" and "is not physically qualified for retention in the naval service due to psoriatic arthritis and psoriasis." Enclosure (1). On 25 January 2001, the Navy Personnel Command concluded that in accordance with the relevant directives including the MILPERSMAN and SECNAVINST 18504, CDR Havens deemed to be not physically qualified for retention in either the Ready Reserve or Standby Reserve and that he could not perform any training, active or inactive and could only complete Navy correspondence courses. Enclosure (2). Additionally, On 7 July 2001, the Commander, Naval Air Reserve Center, submitted a letter that CDR Havens suffered pain, was unable to stand for moderate periods of time and has great difficulty with stairs as a result of his medical conditions and that normal performance of duties would likely exacerbate his condition. The Commander then concluded by stating that he could not "assign him to any billet requiring worldwide assignment" and that CDR Havens should be found "physically unfit for further service" and that his retention was "not in the best interest of this command or the United States Navy." Enclosure (3). These facts certainly supported and warranted the PEB's determination of not physically qualified. Thus, this same information would also warrant this Board's conclusion that if the PEB had applied the correct standard, they would have made a determination that CDR Havens was and is unfit for military duty and should be medically retired in accordance with section 1201 of Title 10, U.S. Code.

4. Although it would be appropriate for this Board to conclude that CDR Havens is unfit for duty and to medically retire him, the other acceptable option would be to simply order that a new PEB be convened to consider CDR Havens' case under the appropriate standards and to made a determination of his fitness or unfitness for continued duty in the naval service. In that instance, a whole new medical board procedure would be conducted. He could be given a comprehensive medical evaluation of his conditions and impairments and his ability to perform military duties so that the PEB would have all of the relevant evidence to make their determination.

5. Directing the Navy to convene a new PEB to make a correct determination of CDR Havens' fitness or unfitness for duty would certainly would be an appropriate and legitimate response to this instant case. Since the PEB was not conducted properly and did not make a required determination, a decision from this Board to reconvene a new board and to perform their duties in the correct manner would be manifestly warranted

and appropriate. However, in light of CDR Havens' documented decade-long history of psoriasis and psoriatic arthritis and the V.A. determination that he is 100% disabled as a result of these conditions, this Board may well determine that a more efficient and effective result would be to simply determine that CDR Havens is unfit for military duty and to medically retire him. Such a decision would negate the need for recalling CDR Havens back to active duty and preclude the need for the investment of substantial time and resources, both personnel and financial, which would be incurred by conducting a new PEB. Either of these options would be appropriate and would satisfy CDR Havens.

6. What cannot be done is the action recommended by the advisory opinion. After conceding that the PEB was conducted in violation of the required directives and cannot be upheld, the advisory opinion recommends that this Board reach a conclusion which is directly contrary to the findings of the PEB in 2001. This opinion expressly requests that this Board make the unilateral determination that CDR Havens is and was fit for full duty and to simply amend the findings of the previous PEB. Such a result is blatantly impermissible. The determination which the advisory opinion requests this Board to make is directly contrary and contradictory to the decision made by the PEB. The PEB considered the available medical evidence of CDR Havens' medical conditions and determined that CDR Havens was NOT PHYSICALLY QUALIFIED for further military service. The advisory opinion requests this Board to conclude that CDR Havens is "fit for full duty" despite his medical conditions which have been present for over a decade. Despite the extremely selective and one-sided recitation of facts summarized in the advisory opinion, the PEB found that he was not qualified for military duty, even in the reserves. This same conclusion was directly supported by the determinations made by the Bureau of Medicine and Surgery and the Navy Personnel Command, both of whom expressly concluded that CDR Havens was not physically qualified for retention in the naval service due to psoriatic arthritis and psoriasis." Enclosures (1) and (2). Additionally, the Commander, Naval Air Reserve Center concluded he could not "assign him to any billet requiring worldwide assignment" and that CDR Havens should be found "physically unfit for further service" and that his retention was "not in the best interest of this command or the United States Navy." Enclosure (3). These facts certainly supported the PEB's determination and expressly contradict the advisory opinion's recommendation that this Board determine that CDR Havens is and was fully fit for military duty.

7. As a direct result of the legal and factual errors committed by the previous PEB, CDR Havens was separated from the reserves by reason of physical disability and transferred to Retired Reserve status when he was required to have been medically retired pursuant to 10 U.S.C. 1201 and afforded the appropriate disability rating because his disabling conditions were incurred while he was serving on active duty for more than 30 days. In order to correct this legally incorrect and erroneous result which has caused a blatant miscarriage of justice, it is respectfully requested that this Board correct this mistake by announcing a direct order and decree that CDR Havens should be granted retirement in accordance with Title 10, U.S.C. section 1201 retroactive to 1 March 2002, the date when he was improperly transferred to the Ready Reserves rather than properly being retired. This is the result which should have been announced previously and such

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE:jdh
Docket No. 01562-05
5 April 2006

CDR WILLIAM R HAVENS USNR RET

Dear Commander Havens:

Reference is made to your Application for Correction of Naval Records (DD Form 149).

The records in your case were referred to the appropriate office for an advisory opinion. The opinion has been received and a copy is enclosed for your information. This opinion is advisory only and is not binding upon the Board or the Secretary of the Navy.

If you wish to submit any further statement or additional documentary material in support of your application, you should do so within 30 days of the date of this letter.

Sincerely,

JAMES R. EXNICIOS
Head, Disability Section

Enclosure

DEPARTMENT OF THE NAVY
SECRETARY OF THE NAVY COUNCIL OF REVIEW BOARDS
720 KENNON STREET SE STE 309
WASHINGTON NAVY YARD DC 20374-5023

IN REPLY REFER TO
5220
CORB: 00s
22 Mar 06

From: Director, Secretary of Navy Council of Review Boards
To: Executive Director, Board for Corrections of Naval Records

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF CDR WILLIAM R HAVENS, USNR, RETIRED,

Ref: (a) Your ltr JRE:jdh Docket No: 01562-05 of 8 Mar 06
(b) SECNAVINST 1850.4E

1. The petitioner's case history, contained in reference (a), was thoroughly reviewed in accordance with reference (b) and is returned. The following comments are provided.

2. In a 21 February 2005, Petitioner (a former CDR/USNR, reportedly, with about 16 years ACDU [?1980-1996]) contends that a 1 March 2001 Physical Evaluation Board (PEB) erred in its determination that a the former member's psoriatic arthritis rendered Petitioner NPQ, but, rather, that he should have been "retired by reason of physical disability on 1 MAR 2002 with a proximate finding which should have been line of duty finding."

3. Pertinent documentary history includes:

a. Late 1995 sf600 Health Record Entries (Treasure Island) indicating persistent painful swollen Left dominant 4th finger DIP & Right great toe onycholysis, a 2 year history of intergluteal skin rash, and fevers & fatigue.

b. 06 February 1996 sf600 HRE indicating diagnosis of PSORIATIC ARTHRITIS "by BX (biopsy) Nov '95".

c. 09 September 1996 Separation Physical Exam sf93 mentions Psoriatic Arthritis, further indicating that Petitioner was a TAR and "was diagnosed/treated for this condition during 1995-96 and was found FIT for full duty and qualified for separation/retirement/transfer to Fleet Reserve during Retirement Physical on 27 June 96."

000032

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF CDR WILLIAM R HAVENS, USNR, RETIRED,

d. A 24 September 1997 Oakland Regional VA rating of 40% as follows:

   i. PSORIATIC ARTHRITIS 20%
   ii. PSORIASIS WITH ONYCHOMYOSIS and "history of paronchia [sic] & staph 10%"
   iii. UNDIAGNOSED ILLNESS manifested by fatigue & recurrent fevers 10%

e. A 21 October 2000 sf88 Physical Examination which recommended "Board Review for 'Psoriatic arthritis' history" and noted "swelling DIP joint Left 4th finger" & "swelling 1st & 2nd toes bilaterally."

f. An 11 March 2001 NMA/COMNAVRES Voluntary Training Unit 887 to PERS 911 indicated that Petitioner had not been on ACDU since 30 May 2000, that he was working within his designator (1115), that "arthritis limits time standing and grasping of heavy objects with left hand. …has not been in a full duty status since…May 30, 2000." Further, his condition had not required time away from duties for treatment/evaluation/ recuperation while as a SELRES, but Petitioner had been awarded 40% by the VA.

g. A 21 April 2001 sf93 physical examination found Petitioner NPQ "psoriatic Arthritis since 1995…Since 1998 pt did not participate in PRT…40% disability from VA."

h. A 13 June 2001 IPEB finding of PQ.

i. A 7 July 2001 COMNAVRESCEN NMA ltr to PPB recommending reconsideration based on Petitioner's contention "that his arthritis causes pain, prevents him from standing for moderate periods of time and that he has great difficulty descending stairs. The results of his latest medical examination on 21 April 2001 and another examination by a VA rheumatologist support these contentions…I am not reasonably certain that the normal performance of duties would not significantly exacerbate CDR Havens' medical condition…I cannot in good conscience assign him to any billet requiring worldwide assignment."

j. A 19 July 2001 IPEB finding of NPQ.



00093

k. A 26 September 2001 ltr from Kevin L. Craig, LCDR/MC/USN ("former active duty Navy general medical officer … stationed at the Branch medical Clinic Treasure Island from 08/95 to 05/97" & conducted Petitioner's separation physical exam) indicated, "After reviewing…the letter by Dr. Mary Nakamura of the Arthritis Clinic at ASFVAMC, I find no evidence that his disease has significantly progressed since the time I performed his separation physical in 1996 [when]…he was manifesting an exacerbation of his disease, which is both typical and expected of this disease and not representative of a worsening of his arthritis…[therefore] if he was physically qualified…in 1996, then…he should be found physically qualified now. [underlining added]"

l. A 27 September 2001 ltr from Petitioner requested "re-opening of docket No: 7277-99 for reconsideration…"

m. A 29 October 2001 BCNR response, including, "Although psoriatic arthritis can be a serious disease process, it was manifested in your case by fatigue, reduced exercise tolerance, and pain in a finger and two toes, which did not preclude your [SIC] from performing you duties (prior to 1 September 1996 release from ACDU)."

n. A CNPC ltr of 25 January 2001 "assigned me a Physical Risk Classification of '5' for…psoriatic arthritis and psoriasis."

o. A 09 July 2001/VA Staff Rheumatologist evaluation by Mary Nakamura, MD indicated that Petitioner, "is followed in the Arthritis Clinic at the SPVAMC …psoriatic arthritis. His symptoms began in September 1995. Since that time he has had a series of symptoms including arthritic complaints in the hands, ankles, feet, and low back. Until recently, his symptoms were limited and treated with regular doses of NSAIDS. His low back pain has persisted for 4 years. He also cites intermittent recurrent pain and swelling of the joints in the regions described above. He currently reports pain at the left 4th finger, distal interphalangeal joint. The base of his right thumb has been chronically inflamed. He also has had nail changes and skin eruptions…bilateral great toe pain, at the interphalangeal joint. Radiograph data show

corrosive changes of the joints particularly in the left 4th finger and the first metatarsal-phalangeal joints of both feet. Beginning in May 2001, he developed worsening right ankle pain due to inflammatory arthritis and Achilles tendon enthesopathy. Due to these symptoms, he reports inability to walk quickly or run. …due to a flare in his psoriatic arthritis. …has been started on Methotrexate…mild improvement in pain…continues to have difficulty with ambulation. Over the next 6 months…should not engage in activities requiring prolonged or rapid ambulation."

p. A 28 December 2001 DIRNCPB response to Petitioner's letter of 20 December 2001 indicated that "as a drilling reservist without a Notice of Eligibility [the PEB determination options were limited to PQ or NPQ vice Fit or Unfit]…The fact that he became a drilling reservist after the incurrence of a disability makes him ineligible for a FIT/UNFIT determination."

4. In summary, review of the available documents, including the foregoing, suggests that Petitioner did, indeed:

a. develop manifestations of Psoriasis with Psoriatic Arthritis while on ACDU in about 1995 while on ACDU per orders for a period of over 30 days;

b. on 24 September 1997, receive an award of 40% from the VA (30% due to manifestations of Psoriasis & 10% for "Undiagnosed Illness");

c. develop an exacerbation of his Psoriasis during subsequent Reserve duty, ultimately, resulting in referral to the PEB, which, by the 19 July 2001 finding of the IPEB, determined that Petitioner's condition rendered him NPQ; but

d. was the subject of a 2001 era NMA that strongly suggests that his medically related impairment for continued reserve duty was largely limited to restrictions on PRT performance & deployability. This, latter, along with the 26 September 2001 letter of Dr. Kevin Craig, calls into question the accuracy of the above IPEB determination and, indeed, suggests that a finding of PQ or Fit was indicated. This combines with evidence from the VA Examination of Dr. Nakamura

to suggest that, while duty limiting with respect to worldwide assign ability, the arthritic and cutaneous manifestations of the Petitioner's psoriatic condition were insufficient to render him Unfit for Continued Naval Service.

5. Hence, in conclusion:

a. As contended in subject BCNR application, the 19 July 2001 IPEB should have made a determination of Fit vs. Unfit vice PQ vs. NPQ for Continued Naval Reserve Service; however,

b. In the absence of evidence of significant impairment of ACDU performance from Service Records, Medical Records, or additional VA evidence, Petitioner would appear to have been Fit for Continued Naval Reserve Service at the time of his 1 March 2002 discharge; and it is recommended that Petitioner's record be amended to reflect same. It is noted that Military PEB determinations are performance based requiring evidence that a given medical condition renders a service member Unfit while VA Rating Decisions are largely based on the manifestations of medical conditions without a requirement that such render the veteran Unfit for Continued Service.

M. L. CULVER

DEPARTMENT OF THE NAVY
SECRETARY OF THE NAVY COUNCIL OF REVIEW BOARDS
720 KENNON STREET SE STE 309
WASHINGTON NAVY YARD DC 20374-5023

IN REPLY REFER TO
5220
CORB: 00s
22 Mar 06

From: Director, Secretary of Navy Council of Review Boards
To: Executive Director, Board for Corrections of Naval Records

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF CDR WILLIAM R HAVENS, USNR, RETIRED,

Ref: (a) Your ltr JRE:jdh Docket No: 01562-05 of 8 Mar 06
(b) SECNAVINST 1850.4E

1. The petitioner's case history, contained in reference (a), was thoroughly reviewed in accordance with reference (b) and is returned. The following comments are provided.

2. In a 21 February 2005, Petitioner (a former CDR/USNR, reportedly, with about 16 years ACDU [?1980-1996]) contends that a 1 March 2001 Physical Evaluation Board (PEB) erred in its determination that a the former member's psoriatic arthritis rendered Petitioner NPQ, but, rather, that he should have been "retired by reason of physical disability on 1 MAR 2002 with a proximate finding which should have been line of duty finding."

3. Pertinent documentary history includes:

a. Late 1995 sf600 Health Record Entries (Treasure Island) indicating persistent painful swollen Left dominant 4th finger DIP & Right great toe onycholysis, a 2 year history of intergluteal skin rash, and fevers & fatigue.

b. 06 February 1996 sf600 HRE indicating diagnosis of PSORIATIC ARTHRITIS "by BX (biopsy) Nov '95".

c. 09 September 1996 Separation Physical Exam sf93 mentions Psoriatic Arthritis, further indicating that Petitioner was a TAR and "was diagnosed/treated for this condition during 1995-96 and was found FIT for full duty and qualified for separation/retirement/transfer to Fleet Reserve during Retirement Physical on 27 June 96."

00037

APR - 4 2006

d. A 24 September 1997 Oakland Regional VA rating of 40% as follows:
   i. PSORIATIC ARTHRITIS 20%
   ii. PSORIASIS WITH ONYCHOMYOSIS and "history of paronchia [sic] & staph 10%"
   iii. UNDIAGNOSED ILLNESS manifested by fatigue & recurrent fevers 10%

e. A 21 October 2000 sf88 Physical Examination which recommended "Board Review for 'Psoriatic arthritis' history" and noted "swelling DIP joint Left 4th finger" & "swelling 1st & 2nd toes bilaterally."

f. An 11 March 2001 NMA/COMNAVRES Voluntary Training Unit 887 to PERS 911 indicated that Petitioner had not been on ACDU since 30 May 2000, that he was working within his designator (1115), that "arthritis limits time standing and grasping of heavy objects with left hand. …has not been in a full duty status since…May 30, 2000." Further, his condition had not required time away from duties for treatment/evaluation/ recuperation while as a SELRES, but Petitioner had been awarded 40% by the VA.

g. A 21 April 2001 sf93 physical examination found Petitioner NPQ "psoriatic Arthritis since 1995…Since 1998 pt did not participate in PRT…40% disability from VA."

h. A 13 June 2001 IPEB finding of PQ.

i. A 7 July 2001 COMNAVRESCEN NMA ltr to PPB recommending reconsideration based on Petitioner's contention "that his arthritis causes pain, prevents him from standing for moderate periods of time and that he has great difficulty descending stairs. The results of his latest medical examination on 21 April 2001 and another examination by a VA rheumatologist support these contentions…I am not reasonably certain that the normal performance of duties would not significantly exacerbate CDR Havens' medical condition…I cannot in good conscience assign him to any billet requiring worldwide assignment."

j. A 19 July 2001 IPEB finding of NPQ.

00038

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF CDR WILLIAM R HAVENS, USNR, RETIRED,

k. A 26 September 2001 ltr from Kevin L. Craig, LCDR/MC/USN ("former active duty Navy general medical officer … stationed at the Branch medical Clinic Treasure Island from 08/95 to 05/97" & conducted Petitioner's separation physical exam) indicated, "After reviewing…the letter by Dr. Mary Nakamura of the Arthritis Clinic at ASFVAMC, I find no evidence that his disease has significantly progressed since the time I performed his separation physical in 1996 [when]…he was manifesting an exacerbation of his disease, which is both typical and expected of this disease and not representative of a worsening of his arthritis…[therefore] if he was physically qualified…in 1996, then…he should be found physically qualified now. [underlining added]"

l. A 27 September 2001 ltr from Petitioner requested "re-opening of docket No: 7277-99 for reconsideration…"

m. A 29 October 2001 BCNR response, including, "Although psoriatic arthritis can be a serious disease process, it was manifested in your case by fatigue, reduced exercise tolerance, and pain in a finger and two toes, which did not preclude your [SIC] from performing you duties (prior to 1 September 1996 release from ACDU)."

n. A CNPC ltr of 25 January 2001 "assigned me a Physical Risk Classification of '5' for…psoriatic arthritis and psoriasis."

o. A 09 July 2001/VA Staff Rheumatologist evaluation by Mary Nakamura, MD indicated that Petitioner, "is followed in the Arthritis Clinic at the SPVAMC …psoriatic arthritis. His symptoms began in September 1995. Since that time he has had a series of symptoms including arthritic complaints in the hands, ankles, feet, and low back. Until recently, his symptoms were limited and treated with regular doses of NSAIDS. His low back pain has persisted for 4 years. He also cites intermittent recurrent pain and swelling of the joints in the regions described above. He currently reports pain at the left 4th finger, distal interphalangeal joint. The base of his right thumb has been chronically inflamed. He also has had nail changes and skin eruptions…bilateral great toe pain, at the interphalangeal joint. Radiograph data show

corrosive changes of the joints particularly in the left 4th finger and the first metatarsal-phalangeal joints of both feet. Beginning in May 2001, he developed worsening right ankle pain due to inflammatory arthritis and Achilles tendon enthesopathy. Due to these symptoms, he reports inability to walk quickly or run. …due to a flare in his psoriatic arthritis. …has been started on Methotrexate…mild improvement in pain…continues to have difficulty with ambulation. Over the next 6 months…should not engage in activities requiring prolonged or rapid ambulation."

p. A 28 December 2001 DIRNCPB response to Petitioner's letter of 20 December 2001 indicated that "as a drilling reservist without a Notice of Eligibility [the PEB determination options were limited to PQ or NPQ vice Fit or Unfit]…The fact that he became a drilling reservist after the incurrence of a disability makes him ineligible for a FIT/UNFIT determination."

4. In summary, review of the available documents, including the foregoing, suggests that Petitioner did, indeed:

a. develop manifestations of Psoriasis with Psoriatic Arthritis while on ACDU in about 1995 while on ACDU per orders for a period of over 30 days;

b. on 24 September 1997, receive an award of 40% from the VA (30% due to manifestations of Psoriasis & 10% for "Undiagnosed Illness");

c. develop an exacerbation of his Psoriasis during subsequent Reserve duty, ultimately, resulting in referral to the PEB, which, by the 19 July 2001 finding of the IPEB, determined that Petitioner's condition rendered him NPQ; but

d. was the subject of a 2001 era NMA that strongly suggests that his medically related impairment for continued reserve duty was largely limited to restrictions on PRT performance & deployability. This, latter, along with the 26 September 2001 letter of Dr. Kevin Craig, calls into question the accuracy of the above IPEB determination and, indeed, suggests that a finding of PQ or Fit was indicated. This combines with evidence from the VA Examination of Dr. Nakamura

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF CDR WILLIAM R HAVENS, USNR, RETIRED,

to suggest that, while duty limiting with respect to worldwide assign ability, the arthritic and cutaneous manifestations of the Petitioner's psoriatic condition were insufficient to render him Unfit for Continued Naval Service.

5. Hence, in conclusion:

a. As contended in subject BCNR application, the 19 July 2001 IPEB should have made a determination of Fit vs. Unfit vice PQ vs. NPQ for Continued Naval Reserve Service; however,

b. In the absence of evidence of significant impairment of ACDU performance from Service Records, Medical Records, or additional VA evidence, Petitioner would appear to have been Fit for Continued Naval Reserve Service at the time of his 1 March 2002 discharge; and it is recommended that Petitioner's record be amended to reflect same. It is noted that Military PEB determinations are performance based requiring evidence that a given medical condition renders a service member Unfit while VA Rating Decisions are largely based on the manifestations of medical conditions without a requirement that such render the veteran Unfit for Continued Service.

M. L. CULVER



00101

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE:jdh
Docket No. 01562-05
8 March 2006

From: Chairman, Board for Correction of Naval Records
To: Director, Secretary of the Navy council of Review Boards

Subj: REQUEST FOR COMMENTS AND RECOMMENDATION IN THE CASE OF CDR WILLIAM R. HAVENS, USNR, RETIRED,

Ref: (a) 10 U.S.C. 1552

Encl: (1) BCNR Files (2) #7277-99
(2) Service Record
(3) Disability Evaluation Board Proceedings
(4) VA Records/Medical Records

1. Pursuant to reference (a), Subject requests a correction of his naval record as indicated in enclosure (1).

2. In order to assist the Board in arriving at a fair and equitable decision in this case, it is requested that you provide comments and a recommendation.

3. It is further requested that the enclosures be returned with your reply.

JAMES R. EXNICIOS
By direction

Cat #pnd 6

**REFERENDUM**

Jre

p-recon

Oct 14 2005

Havens, William R.

*01562-05*

Subject's Name:

Havens — Last | William — First | B. — MI | Suffix

☐ REQUEST FOR RECONSIDERATION

☐ Approved: ______________ ______________

☐ Disapproved: ______________ ______________

Signature Date

☑ ADMINISTRATIVE RE-OPEN

☑ Approved: [signature] — Signature | 18 Oct 05 — Date

COMMENTS: ______________

**NOTE:** Please deliver to OIS Section with "closed" BCNR file

NEW Docket No.

1562-05

(OIS/11 1Jul86)

00103

I request for correction of my record for retirement for disability on 1 March 2002. I was retired under U.S. Code Title 10 section 1204 and I was required to be retired under U.S. Code Title 10 section 1201. My petition to Board for Corrections of Naval Records is based on "Newly Discovered Evidence", 'Fraud, Misrepresentation or other Misconduct", and "Mistake of Law".

Effective 1 March 2002 I was transferred to Retired Reserve status based on a Physical Evaluation Board (PEB) finding of "unfit" with the recommended disposition of "Not Physically Qualified to Continue Reserve Status" with the additional finding "the disability is not a proximate result of performing military duty" due to the condition of Psoriatic Arthritis.

Since my disability was "**incurred**" while on active duty on orders greater than 30 days the disposition finding of "NPQ" and the addition finding of "not a proximate result" cannot be used under any circumstance. Proximate findings and NPQ/PQ dispositions can only be used for disabilities that are **incurred** while on orders less than 30 days or while not "entitled to pay"

Commander Navy Personnel Command referred my case to PEB under the specific section of SECNAVINST 1850.4D for a "line of duty" finding for conditions that existed <u>prior to release from active duty</u>. Since my case was referred under "prior service" conditions to PEB and my conditions were "incurred" while on active duty orders over 30 days in length the only finding authorized is "in the line of duty/not in the line of duty".

I request my case be returned back to PEB for a line of duty or not in the line of duty finding. BUMED found me unfit due to "psoriasis" and "psoriatic arthritis" yet PEB only looked at the psoriatic arthritis both conditions are related as such both conditions should be considered.

Prior to addressing specific issues for the bases of my Petition for Relief to BCNR facts in relation to my disability of "Psoriatic Arthritis" and sections of SECNAVINST 1850.4D and how they apply to me are presented.

1850
10R: 111
PEB Index No. N20200002
2 January 2002

From: President, Physical Evaluation Board
To: Chief of Naval Personnel

Subj: NOTIFICATION OF DECISION

REF: (a) SECNAVINST 1850.D

1. Per reference (a), the President, Physical Evaluation Board acting for the Secretary of the Navy has considered the physical condition of the following members of the Naval Service as referred by a medical board to determine each individual's fitness for duty.

2. FINDING. In each instance the member is found **NOT PHYSICALLY QUALIFIED** for active duty in the USN Reserve.

3. DISPOSITION. The Chief of Naval Personnel is requested to either discharge or transfer to a retired status, each member listed as appropriate as provided by 10 U.S.C. section 1209.

| Member | SSN |
|---|---|
| Cdr William R HAVENS, USNR | |

*SIGNED ORIGINAL ON FILE*
S. L. WILLIS
PEB Enbloc Department
By direction

RECONSIDERATION

Date Printed
19 Jul 2001

# Findings of the Physical Evaluation Board Proceedings

Ref. # F201nm05173

Page 1

## PERSONNEL DATA

| 1. Name | 2. SSN | 3. Rate/Rank | 4. Service | 5. Desig. | 6. LOS |
|---|---|---|---|---|---|
| HAVENS, William R | | Cdr | USNR | | 20 yrs. 0 mos. |

## PHYSICAL EVALUATION BOARD

7. The Board convened at: NCPB, Washington DC, 07/16/2001 to consider the MedBoard originated at: New Orleans, LA

Board Membership Consisted of:
CDR, USN, Medical Officer
Col., USMC, Line Officer
Capt., USNR, Line Officer

## FINDINGS

| 8. Finding | 9. Recommended Disposition | 10. Combined Disability Rating |
|---|---|---|
| Unfit | Not Physically Qualified to Continue Reserve Status | |

## DIAGNOSES AND RATINGS

| Category I: Unfitting Conditions | VA Diagnostic Codes | Disability Rating or Reason if not rated |
|---|---|---|
| 1. HISTORY OF PSORIATIC ARTHRITIS (0000) | | |

## ADDITIONAL FINDINGS

11. The disability is not a proximate result of performing military duty.
12. The disability may be permanent.

C. H. Lawson, Jr., LtCol., USMC
By Direction

00106

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE
Docket No: 7277-99
6 December 2002

MR WILLIAM R HAVENS

Dear Mr. Havens:

This is in reference to your letter of 5 November 2002, which we received on 26 November 2002.

If you were to submit a request for correction of your record to show that you were retired by reason of physical disability on 1 March 2002, vice discharged, it would be treated as a new application, rather than a request for reconsideration of a previous application.

Sincerely,

JAMES R. EXNICIOS
Disability Section

Wanda
Can you
order the old
File,

DEPARTMENT OF THE NAVY
BUREAU OF MEDICINE AND SURGERY
2300 E STREET NW
WASHINGTON DC 20372-5300

IN REPLY REFER TO

6110/252
25/RON/A100360
11 Jan 2001

From: Chief, Bureau of Medicine and Surgery
To: Chief, Bureau of Naval Personnel (PERS-911)

Subj: PHYSICAL QUALIFICATION FOR RETENTION IN THE NAVAL RESERVE ICO CDR WILLIAM HAVENS,

Encl: (1) Clinical data on applicant.

1. Enclosure (1) is forwarded/returned.

2. Based on a review of the available medical information, subject officer is assigned Physical Risk "5", and is not physically qualified for retention in the naval service due to psoriatic arthritis; psoriasis.

Larry Grubb -RC

L. K. GRUBB
By direction

DEPARTMENT OF THE NAVY
NAVY PERSONNEL COMMAND
5720 INTEGRITY DRIVE
MILLINGTON TN 38055-0000

6110
PERS-911
25 Jan 01

From: Commander, Navy Personnel Command
To: CDR William R. Havens, USNR-R,
Via: Commanding Officer, Naval Air Reserve Santa Clara

Subj: YOUR STATUS IN THE UNITED STATES NAVAL RESERVE

Ref: (a) MILPERSMAN 6110-020
(b) SECNAVINST 1850.4D
(c) COMNAVRESFORINST 1740.1A
(d) SECNAVINST 1920.6A

Encl: (1) BUMED ltr 6110/252 25/RON/A100360 of 11 Jan 01
(2) Resolution of Status Form

1. Based on the medical information and recommendation of enclosure (1), you are not physically qualified (NPQ) for retention in either the Ready Reserve or Standby Reserve.

2. Per reference (a), you are hereby assigned Physical Risk Classification "5". This means you are not authorized to perform Annual Training (AT) or Inactive Duty Training (IDT) either with or without pay. Your participation is limited to completing Navy correspondence courses and until your medical review process is final, we urge you to complete correspondence courses in order to receive point accreditation for satisfactory years. To order courses you may call the Navy Educational and Training Center at (877) 264-8583. This letter does not exempt you from other provisions of regulations that may apply to you.

3. You must elect one of the following options by completing and returning enclosure (2) to this office, via Commanding Officer, Naval Air Reserve Santa Clara:

a. Request to retire, if eligible.

b. Request to resign your commission. (For NSHS students, this may result in recoupment of all stipends.)

c. Request that your medical record be referred to the Physical Evaluation Board (PEB) for a final determination of physical qualification to remain in the naval service. If you elect the PEB, include a complete copy of your medical record and any information related to your condition.

Subj: YOUR STATUS IN THE UNITED STATES NAVAL RESERVE

4. For Commanding Officer, Naval Air Reserve Santa Clara, if CDR Havens requests to have his Medical Record referred to the PEB, please submit, via Commander, Navy Personnel Command (PERS-911), with a current Physical Examination (SF88/93) and Non-Medical Assessment questionnaire, per reference (b).

5. Per reference (c), you may be eligible for benefits under the Reserve Transition Benefits (RTB) Program. Please contact your Naval Reserve Activity to determine your eligibility for benefits, if any.

6. Should you not respond within 60 days from the date of this letter, your status will be resolved by the Naval Reserve Officer Mobilization Disposition Board, per reference (d). If you have questions or need assistance, you may contact this office, PERS-911, at (901) 874-4489/4485 or DSN 882-4489/4485.

C. B. WILSON, JR.
By direction

Copy to: (w/o encl (2))
BUMED (Code 25)
COMNAVRESFOR (Code N01M)

**DEPARTMENT OF THE NAVY**
NAVAL AIR RESERVE CENTER
995 E. MISSION STREET
SAN JOSE, CALIFORNIA 95112-1099

IN REPLY REFER TO:
6120
Ser N00/0244
7 Jul 01

From: Commanding Officer, Naval Air Reserve Center, San Jose
To: President, Physical Evaluation Board

Subj: NON-MEDICAL ASSESSMENT ICO CDR WILLIAM R. HAVENS, USNR, 1115

1. Forwarded, respectfully recommending reconsideration and requesting further guidance from the Physical Evaluation Board.

2. Commander Havens contends that his arthritis causes pain, prevents him from standing for moderate periods of time and that he has great difficulty descending stairs. The results of his latest medical examination on 21 April 2001 and another examination by a VA rheumatologist support these contentions. CDR Havens has performed four drills under my command. On the three occasions we have met, I found CDR Havens to be personable and straight-forward. He has given me no reason to doubt his word or dispute his contentions. After reviewing his medical record, examining the details of his 40 percent Veterans Affairs disability rating and discussing his case with medical personnel, I am not reasonably certain that the normal performance of duties would not significantly exacerbate CDR Havens' medical condition, or that his assignment would not become a detriment to the morale and mission readiness of his assigned unit. I cannot in good conscience assign him to any billet requiring worldwide assignment. Until I receive further specific guidance and assurance that the normal performance of his duties will not hazard CDR Havens' health or become a liability to his shipmates, in my opinion CDR Havens' assignment to the Naval Reserve Force is not in the best interest of this command or the United States Navy.

3. I recommend that CDR Havens be found physically unfit for further Naval Service.

J. F. LOWDER

Copy to:
CDR Havens

00111

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE
Docket No: 7277-99
6 December 2002

MR WILLIAM R HAVENS

Dear Mr. Havens:

This is in reference to your letter of 5 November 2002, which we received on 26 November 2002.

If you were to submit a request for correction of your record to show that you were retired by reason of physical disability on 1 March 2002, vice discharged, it would be treated as a new application, rather than a request for reconsideration of a previous application.

Sincerely,

JAMES R. EXNICIOS
Disability Section

November 5, 2002

From: William R. Havens
To: Board for Correction of Naval Records

Subj: Administrative Question

Ref: (a) BCNR ltr dtd 29 October 2001 Docket No: 7277-99
(b) SECNAVINST 1850.4d

In BCNR's letter, reference (a) it is indicate I was properly discharged in 1996. I understand my first correspondence to the board in November 1999 was wrong and I accept my discharge was in accordance with reference (b). I was attempting to submit a new package to the board concerning my recent discharge from the Naval Reserve on 1 March 2002 as a different issue completely separate from my discharge from active duty in 1996.

Feeling strongly my case before Physical Evaluation Board was not properly adjudicated according to reference (b) I sought civilian legal assistance with an expertise in military law. This attorney concurs with my belief and feels a new petition before the board is warranted. However before he proceeds, he has requested I obtain a response from BCNR on how a third petition will be received. As he has started, "I have created a royal mess and muddied up the whole process with my original petition and my follow on reconsiderations to the original petition. And then now with my second petition, I have only confused the situation even more".

My questions are; - Can I submit a new petition before the board?
- Will the new petition be considered as a new petition or a reconsideration of my first petition?

Please note I have a new address,

Sincerely,

William R. Havens

00113




**William J. Holmes**
*Attorney at Law*
6064 Indian River Road
Suite 203
Virginia Beach, Virginia 23464

James R. Exnicios
Head, Disability Section
Board for Correction of Naval Records
2 Navy Annex
Washington, D.C. 20370-5100

FAIRFIELD IL 62837
PM
5 NOV
2002

BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON, D.C. 20370-5100

20370+5100

00115

**REFERENDUM**

00/CO

DUP-8220-01

Affix
Barcode
Label
Here

Subject's Name:

Havens William R
Last First MI Suffix

[x] REQUEST FOR RECONSIDERATION

[ ] Approved:

[x] Disapproved:

Signature Date 12 Apr 02

[ ] ADMINISTRATIVE RE-OPEN

[ ] Approved:

Signature Date

COMMENTS: No new material evidence

DUP CLOSED

NOTE: Please deliver to
OIS Section with "closed"
BCNR file

NEW Docket No.

(OIS/11 1Jul86)

00116

From: CDR William R. Havens USNR
To: Board for Correction of Naval Records

Subj: Request for re-opening of Docket No: 7277-99 for reconsideration

Ref: (a) Your ltr JRE ser 7277-99 dtd 20 Aug 2001
(b) BUMED ltr 6110/252 25/RON/A100360 of 11 Jan 01
(c) DODI 1332

Encl: (1) Ltr from Dr. Craig date 26 Sep 2001
(2) NARC San Jose Ser N91/407 dtd 1 Dec 2000
(3) Report of Medical Examination (SF 88) of 21 Oct 00

1. Respectively, request re-opening of Docket No: 7277-99 for reconsideration. New evidence is provided enclosure (1) supporting this request as addressed by reference (a).

2. Reference (b) places me unfit for naval service because of psoriasis and psoriatic arthritis. I request my case be adjudicated under the statutory provisions applicable at the time of onset or aggravation of the conditions. Since these conditions where diagnosed and treated during my final two years of active duty, reference (c) sections E3.P4.3 and E3.P4.2.1.2 should apply. Doctor Craig clearly states in his letter enclosure (1), my current condition is the same as it was at the time of my discharge from active duty. He also indicates a medical board should of been requested as such I should considered under active duty provisions.

3. Enclosure (2) is provided to show what evidence was submitted to BUMED for consideration. Please note the only documentation submitted that concerned my current physical condition at that time was a report of medical examination (SF 88) completed 21 Oct 2000, which is provided as enclosure (3), where I was found "physically fit". I transferred into NARC San Jose, only drilling two days. I was not placed NPQ or even questioned on my medical condition during those drills. The medical department of NARC San Jose on receipt and review of my medical record from NRC Sacramento, placed me NPQ, because of a history of psoriasis and psoriatic arthritis in my record not because of a change in my medical condition. Additionally, if my condition had become more severe after active duty why was I found "physically fit" at my annual physicals in 1997, 1998, 1999, and 2000 with the reserves? The only medical evidence provided and used by BUMED to find me unfit was my history from active duty of psoriasis and psoriatic arthritis.

4. I do not know if the error not to request a medical board prior to my discharge was with Treasure Island Medical Clinic or with the Naval Reserve. Either way, I was found unfit for conditions that existed while in an active duty status over 30 days, in pay, and my conditions had not become more severe while in the reserves. Since the Naval Reserve can use my active duty medical conditions for a BUMED determination, I should be adjudicated under active duty provisions. I request to be placed back into an active duty status allowing me to be adjudicated by the DES system under active duty provisions.

Sincerely

William R. Havens

00117

4. HOME ADDRESS (Number, street or RFD, city or town, State and ZIP Code) RICHARD
5. PURPOSE OF EXAMINATION 05/... LUSNIA
IDENTIFICATION NO. SSN#
DATE OF EXAMINATION 10-21-0
10-21-0

7. SEX Male
8. RACE Cau
9. TOTAL YEARS GOVERNMENT SERVICE — MILITARY 20 — CIVILIAN
RETSH/NPC
10. AGENCY DOD/DO NAVY
11. ORGANIZATION UNIT
12. DATE OF BIRTH
13. PLACE OF BIRTH Rochester N.Y.
14. NAME, RELATIONSHIP, AND ADDRESS OF NEXT OF KIN H.C. Hanelas (same #4) Wife
15. EXAMINING FACILITY OR EXAMINER, AND ADDRESS Branch Clinic, USCG, Coast Guard Island, Alameda, California N&MCRC, Med. Dept., San Jose, CA. 95112-1699
16. OTHER INFORMATION Relig Cat Pref.:
17. RATING OR SPECIALTY Rate/Officer Designator 1115
TIME IN THIS CAPACITY (Total) 20
LAST SIX MONTHS 6

## CLINICAL EVALUATION

| NOR-MAL | (Check each item in appropriate column; enter "NE" if not evaluated.) | ABNOR-MAL |
|---|---|---|
| ✓ | 18. HEAD, FACE, NECK AND SCALP | |
| ✓ | 19. NOSE | |
| ✓ | 20. SINUSES | |
| ✓ | 21. MOUTH AND THROAT | |
| ✓ | 22. EARS—GENERAL (Int. & ext. canals) (Auditory acuity under items 70 and 71) | |
| ✓ | 23. DRUMS (Perforation) | |
| ✓ | 24. EYES—GENERAL (Visual acuity and refraction under items 59, 60 and 67) | |
| ✓ | 25. OPHTHALMOSCOPIC | |
| ✓ | 26. PUPILS (Equality and reaction) | |
| ✓ | 27. OCULAR MOTILITY (Associated parallel movements, nystagmus) | |
| ✓ | 28. LUNGS AND CHEST (Include breasts) | |
| ✓ | 29. HEART (Thrust, size, rhythm, sounds) | |
| ✓ | 30. VASCULAR SYSTEM (Varicosities, etc.) | |
| ✓ | 31. ABDOMEN AND VISCERA (Include hernia) | |
| ✓ | 32. ANUS AND RECTUM (Hemorrhoids, fistulae) (Prostate, if indicated) | |
| ✓ | 33. ENDOCRINE SYSTEM | |
| ✓ | 34. G-U SYSTEM | |
| | 35. UPPER EXTREMITIES (Strength, range of motion) | ✓ |
| | 36. FEET | |
| | 37. LOWER EXTREMITIES (Except feet) (Strength, range of motion) | ✓ |
| ✓ | 38. SPINE, OTHER MUSCULOSKELETAL | |
| ✓ | 39. IDENTIFYING BODY MARKS, SCARS, TATTOOS | |
| | 40. SKIN, LYMPHATICS | ✓ |
| ✓ | 41. NEUROLOGIC (Equilibrium tests under item 72) | |
| ✓ | 42. PSYCHIATRIC (Specify any personality deviation) | |
| | 43. PELVIC (Females only) (Check how done) ☐ VAGINAL ☐ RECTAL | |

NOTES. (Describe every abnormality in detail. Enter pertinent item number before each comment. Continue in item 73 and use additional sheets if necessary.)

AA: Favorable/Unfavorable
SBT: Steady/ Unsteady
VALSALVA: WNL/ Abnormal

#32 Prostate – WNL
Hemoccult ⊖

– swelling DIP joint Ⓛ 4th finger
swelling 1st & 2nd toes bilat.

#39 Identifying Body Marks/ Scars/ Tattoos None
Raised Red plaque perianal + buttock crease

(Continue in item 73)

44. DENTAL (Place appropriate symbols, shown in examples, above or below number of upper and lower teeth.)

Restorable teeth — Non-restorable teeth — Missing teeth — Replaced by dentures — Fixed Partial dentures

RIGHT 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 LEFT
32 31 30 29 28 27 26 25 24 23 22 21 20 19 18 17

REMARKS AND ADDITIONAL DENTAL DEFECTS AND DISEASES
T2 Dental Examination
TYPE 2 3 EXAM
CLASS- 1 2 3 4
DENTALLY QUALIFIED YES (NO)
Qualified: Yes No

## LABORATORY FINDINGS

45. URINALYSIS: A. SPECIFIC GRAVITY
B. ALBUMIN NEG
C. SUGAR NEG
D. MICROSCOPIC NEG
46. CHEST X-RAY (Place, date, film number and result)
47. SEROLOGY (Specify test used and result) RPR: NR
48. EKG WNL
49. BLOOD TYPE AND RH FACTOR O POS
50. OTHER TESTS
GLU 99 CHOL 163 TRIG 128 LDL 103
HCT 44.1 HDL 34 HIV NEG
G6PD NORM SCT NEG

88-110

00118

ENCL (3)

SITTING SYS. 130 DIAS. 80 | B. RECUMBENT SYS. DIAS. | C. STANDING (3 MIN.) SYS. DIAS. | 57. PULSE (Arm at heart level) A. SITTING 66. B. AFTER EXERCISE C. 2 MIN. AFTER D. RECUMBENT E. AFTER STANDING 3 MIN.

58. DISTANT VISION
RIGHT 20/ >200 CORR. TO 20/ 25
LEFT 20/ >200 CORR. TO 20/ 20

60. REFRACTION
BY S. CX
BY S. CX

61. NEAR VISION
20 > 200 CORR. TO 20/25 BY
20 > 200 CORR. TO 20/25 BY

62. HETEROPHORIA (Specify distance)
ES° EX° R. H. L. H. PRISM DIV. PRISM CONV. CT PC PD

63. ACCOMMODATION
RIGHT LEFT

64. COLOR VISION (Test used and result)
F 9/9

65. DEPTH PERCEPTION (Test used and score)
UNCORRECTED
CORRECTED

66. FIELD OF VISION

67. NIGHT VISION (Test used and score)

68. RED LENS TEST

69. INTRAOCULAR TENSION

70. HEARING
RIGHT WV /15 SV /15
LEFT WV /15 SV /15

71. AUDIOMETER

| | 250 | 500 | 1000 | 2000 | 3000 | 4000 | 6000 | 8000 |
|---|---|---|---|---|---|---|---|---|
| | 256 | 512 | 1024 | 2048 | 2896 | 4096 | 6144 | 8192 |
| RIGHT | — | 05 | 00 | 00 | 20 | 20 | 20 | — |
| LEFT | — | 05 | 10 | 25 | 40 | 50 | 50 | — |

72. PSYCHOLOGICAL AND PSYCHOMOTOR (Tests used and score)

73. NOTES (Continued) AND SIGNIFICANT OR INTERVAL HISTORY

This Physical Exam has been
reviewed for completeness
and accuracy by:

Signature Date

(Use additional sheets if necessary)

74. SUMMARY OF DEFECTS AND DIAGNOSES (List diagnoses with item numbers)

Psoriasis

arthritis – Dx'ed as psoriatic arthritis

75. RECOMMENDATIONS—FURTHER SPECIALIST EXAMINATIONS INDICATED (Specify)

Board Review for "Psoriatic Arthritis" Hx

76. A. PHYSICAL PROFILE

| P | U | L | H | E | S |
|---|---|---|---|---|---|
| | | | | | |

77. EXAMINEE (Check) Retention in the USN-R PQ to Perform all duties of
A. [X] IS QUALIFIED FOR His/Her Rank/Rate at Sea or on Foreign Shores.
B. [ ] IS NOT QUALIFIED FOR Pending Board Review PQ & AA for DIACA/DIF AS SG- I/II/III

78. IF NOT QUALIFIED, LIST DISQUALIFYING DEFECTS BY ITEM NUMBER

B. PHYSICAL CATEGORY

| A | B | C | E |
|---|---|---|---|
| | | | |

79. TYPED OR PRINTED NAME OF PHYSICIAN
G J RUMORE CAPT MC USNR
SIGNATURE [signature]

80. TYPED OR PRINTED NAME OF PHYSICIAN
SIGNATURE

81. TYPED OR PRINTED NAME OF DENTIST OR PHYSICIAN (Indicate which)
[signature]
SIGNATURE Laura S Koenaman

82. TYPED OR PRINTED NAME OF REVIEWING OFFICER OR APPROVING AUTHORITY
SIGNATURE

NUMBER OF ATTACHED SHEETS

GPO: 1971 446-044/18

00119

Encl (3)

DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

WDP:jre:wma
Docket No.7277-99
May 22, 2002

WILLIAM R HAVENS

Dear Mr. Havens:

This is in reference to your application, DD Form 149, dated January 22, 2002. You previously petitioned the Board and were advised in our letter of October 29, 2001, that your application had been disapproved.

Your current application has been carefully examined. Although, at least some of the material you have submitted is new, it is not material. In other words, even if this material were presented to the Board, the decision would inevitably be the same. Accordingly, reconsideration is not appropriate at this time.

It is regretted that the facts and circumstances of your case are such that a more favorable reply cannot be made.

Sincerely,

W. DEAN PFEIFFER
Executive Director

REFERENDUM

Jre

p-recon

Havens, William R.

*04511-02*

Subject's Name:

| Havens | W | R | |
|---|---|---|---|
| Last | First | MI | Suffix |

☑ REQUEST FOR RECONSIDERATION

MAY 17 20

☐ Approved: ______ ______

☑ Disapproved: ______ ______

Signature 10 May 07
Date

☐ ADMINISTRATIVE RE-OPEN

☐ Approved: ______ ______

Signature Date

COMMENTS: Nothing new

NOTE: Please deliver to OIS Section with "closed" BCNR file

NEW Docket No.

(OIS/11 1Jul86)

00121

Phd

**APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552**

*(Please read instructions on reverse side BEFORE completing application.)*

*Form Approved OMB No. 0704-0003 Expires Sep 30, 2003*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.

**PRIVACY ACT STATEMENT**

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

ROUTINE USE(S): None.

DISCLOSURE: Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

**1. APPLICANT DATA**

a. BRANCH OF SERVICE *(X one)*: ARMY | X NAVY | AIR FORCE | MARINE CORPS | COAST GUARD

b. NAME *(Last, First, Middle Initial) (Please print)*: HAVENS WILLIAM R.

c. PRESENT PAY GRADE: O5

d. SERVICE NUMBER *(If applicable)*:

e. SSN: 7

2. TYPE OF DISCHARGE *(If by court-martial, state type of court)*: HON

3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES *(Active duty, Retired, Reserve, etc.)*: RETIRED

4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY *(YYYYMMDD)*: 1991-09-01

5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD: US NAVY RESERVE

6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. *(No expense to the Government) (X one)*: X YES | NO — WITH ADVANCE NOTICE

7. COUNSEL *(If any)*

a. NAME *(Last, First, Middle Initial)*:

b. ADDRESS *(Street, Apartment Number, City, State and ZIP Code)*:

8. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE:

ASSIGNED A DISABILITY RATING AND IN THE LINE OF DUTY DETERMINATIO

9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:

DISCHARGED FROM ACTIVE DUTY WITH KNOWN MEDICAL CONDITIONS AND THEN FORCE TO RETIRE DUE TO THOSE CONDITIONS FROM NAVAL RESERVES WITH A CHANGE IN MY MEDICAL CONDITIONS WITHOUT A RATING OR MEDICAL

10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING: *(If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)*

VA RECORD 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
SEE ATTACHED LETTER

11. ALLEGED ERROR OR INJUSTICE

a. DATE OF DISCOVERY *(YYYYMMDD)*: 2002 01 02

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION.

N/A PEB FINDINGS JUST RECV

12. APPLICANT MUST SIGN IN ITEM 16. IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.

SPOUSE | WIDOW | WIDOWER | NEXT OF KIN | LEGAL REPRESENTATIVE | OTHER *(Specify)*

13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM. *(U.S. Code, Title 18, Sec. 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE *(Applicant should forward notification of all changes of address.)*

b. TELEPHONE NUMBER *(Include*

DOCUMENT NUMBER *(Do not write in this space.)*

15. DATE SIGNED *(YYYYMMDD)*: 2002-01-27

16. SIGNATURE *(Applicant must sign here)*: William R Havens

DD FORM 149, SEP 2000 — PREVIOUS EDITION IS OBSOLETE.

RECONSIDERATION

00122

January 22, 2002

From: CDR William R. Havens USNR,
To: Board for Correction of Naval Records
Via: Disable American Veterans

Subj: Request for Disability Rating

Ref: (a) DODI 1332.38
(d) SECNAVINST 1850.4D

Encl: (1) BUMED ltr 6110/252 25/RON/A100360 of 11 Jan 01
(2) Statement by LCDR Craig dated 26 September 2001
(3) NMPC PERS-911 ltr 6110 ser NOEREQ dtd 12 Apr 01
(4) PEB response
(5) Request by assigned JAG for written justification
(6) Sections of SECNAVINST 1850.4D that apply with my comments

1. Per enclosure (1) I have been forced to retire from the U. S. Navy after being found unfit for Naval service due to psoriasis and psoriatic arthritis without a disability rating or medical discharge. Since these conditions where diagnosed and treated during my final two years of active duty and did not become more severe as stated by enclosure (2) sections E3.P4.3 and E3.P4.1.1.1.1 from reference (a) apply. Respectively request BCNR have the Physical Evaluation Board (PEB) assign me a disability rating and a determination if the conditions are "in the line of duty".

2. I believe PEB is failing to properly apply reference (b) to my case. Commander Naval Reserve Force (CNRF) and Navy Military Personnel Command (NMPC) forwarded my case to PEB for a "fit or unfit" determination under paragraph 3309b of reference (b) per enclosure (3). PEB's response is provided as enclosure (4) is that my case does not fall under paragraph 3309b as that paragraph only applies to "reservist on recall to active duty" which is a more restrictive and is an unsupported interpretation by PEB. Enclosure (5) was faxed request to Mr. Claussen the Senior Legal Advisor to PEB requesting supportive documentation of the more restrictive interpretation by PEB of the sentence "A service member who has served on active duty 30 days or more". My PEB assigned military attorney, LT. Black did not received a written response from PEB only a verbal that no response to enclosure (5) will be sent.

3. I was place before the PEB under paragraph 3309B requiring I be adjudicated under the provisions applicable at the time of onset of my medical conditions. PEB cannot change how I was entered into the DES. PEB only can return the package back for further documentation or rule not in the line of duty

4. In regards to my case the following information is provided and well documented.

On 11 Jan 2001 Bureau of Medicine and Surgery (BUMED) determined I was not physically qualified for retention in the naval service due to psoriatic arthritis and psoriasis.

My conditions where diagnosed and treated during my final two years of active duty starting in 1995 until my discharge from active duty 1 September 1996. I was on active duty over 30 days, in pay, and a member of the reserves as a Training and Administration of the Reserves (TAR) officer. I was in an active duty status from March 1980 to 1 September 1996 and a member of the Naval Reserve from 1 September 1996 to present.

My conditions where noted on my separation and reserve affiliation physicals. So the Reserves were aware of my conditions.

I did not have a break in service going from active duty to reserve status while under the same oath of office.

My conditions did not become more severe since my separation from active duty and now, as noted by the same doctor who had treated me in 1995/96 and conducted my active duty separation physical. Also I was referred for having disqualifying medical conditions being listed in my medical record and not any other reason such as medical referral or failed PRT. A change in my conditions did not cause my referral to BUMED only a knowledgeable corpsman reading my medical record.

5. Enclosure (6) is excerpts from reference (b) I feel apply to my case with my comments. Enclosure (4) from PEB also gives the other possibility that I should have been assigned a rating prior to discharge. I feel that reference (b) paragraph 3309b was written exactly for that possibility of a military member being discharge without a rating such as my case. Reference (b) section 2038 was specifically included in order not allow misuse of reference (b) in support of 3309b. My conditions incurred while on active duty in pay, and then afterwards while in reserves, as a member of a VTU "while entitled to receive basic pay". Since I went from active into the reserves without a break in service I was always entitle to receive basic pay also I did not have an increase in my conditions while as reservist.

Sincerely

William R. Havens