IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM HAVENS<br>Plaintiff,<br><br>VERSUS<br><br>THE UNITED STATES OF AMERICA<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO: 07-780 C |

**MEMORANDUM IN RESPONSE TO COURT'S ORDER (DOC. 18)**

**1. General background information.**

Personnel on active duty may be regular military, reserve military on active duty and reserve military on active duty for training. Active duty is defined by statute as follows:

> full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. . . .

10 U.S.C. § 101(d)(1). Reserves may be on active duty for limited or for extended periods of time and retain their reserve status. As an example, reservists called up for mobilization are on active duty but still maintained their reserve designation, even when in combat operations.

A "regular" is a member of the regular component of an armed force. In the Navy they carry the designation USN. Reserves, whether or not they are on active duty, are members of the reserve component. 10 U.S.C. § 101(c). In the Navy they carry a USNR or United States Naval Reserve designation. Plaintiff was a "TAR" which stands for the Training and Administration of Reserves. TARS were members of the reserve components and carried a USNR designation. *Keltner v. United States.* 6 Cl.Ct. 824, 826 (Cl.Ct.,1984). TARs were authorized by former 10 U.S.C. § 265. The TAR program no longer exists. *See,* section

1691(a) of Pub.L. 103- 337.

A member of the "Selected Reserve" is assigned to a unit which is subject to unit mobilization. 10 U.S.C. § 10143. Selected Reservists normally drill one weekend per month and perform two weeks of active duty each year. Unless mobilized, they are essentially civilians.

**2. Clarification of the status–active duty or reserve–under which he served in the Navy between 1980 and August 1996 and from September 1996 until March 1, 2002.**

Plaintiff was commissioned with a reserve commission and was placed on active duty. At the time, many commissions from OCS or NROTC were "reserve" commissions. Plaintiff, as most naval officers at the time, had three choices. He could apply via an "augmentation" board for a regular USN commission. He could seek release to the Selected Reserve or he could apply for the TAR program. He chose the latter and became a TAR officer and retained his reserve commission. He remained a TAR officer until he transferred to the Selected Reserve in 1996.

The bottom line is that plaintiff was always a member of the reserve component from commissioning until discharge in March 2002. He was on active duty as a reservist from March 22, 1980. In 1986 he transferred to the TAR program which still involved a reserve commission. On 31 August 1996 he was released from active duty and he was assigned to the Selected Reserve, which still involved a reserve commission. In other words, the plaintiff was a reserve officer throughout his career both on and off active duty.

**3 Did Plaintiff ever work for the Navy in a full-time capacity?**

Yes. Plaintiff was full time for 16 years 5 months and 9 days. Complaint ¶XXX.

**4. If so, why would such work not qualify as service in the "regular" Navy?**

There is no “regular” Navy per se. To be considered part of the “regular” component, a person must have a regular or USN commission. Billets at the time were funded via the Military Personnel Navy (MPN) account and Reserve Personnel Navy (RPN) account. Reserve officers and regular officers are assigned to both MPN and RPN billets depending on the needs of the Navy. Officers of both components served in both regular and reserve officer billets.

When plaintiff was assigned to ship board billets, as an example, he was assigned to a regular or MPN billet. When assigned to the Reserve Center, he was assigned to a reserve of RPN billet. Irrespective of the assignment, he always maintained a reserve commission and until 1996 was on active duty.

**5. What specifically are the obligations of one who is on the Reserve active status list pursuant to 10 U.S.C. § 14002 as opposed to the Selected Reserve, if these obligations differ?**

The obligations are significantly different. A member of the active status list is on active duty for an extended period of time. He or she is on full time active duty.

While on active duty, before and after he became a TAR, plaintiff received pay and allowances at the same allotment as his USN counterparts, based on rank and years of service. He was subject to the Uniform Code of Military Justice for the same period of time. He enjoyed unlimited commissary and exchange privileges. He received active duty medical and dental benefits. He accrued 2½ days of annual leave per year. He was also assignable at the whim of the Chief of Naval Personnel (now Military Personnel Command).

When he transferred to the Selected Reserve, his status changed. He was only paid for his inactive duty training or drills as they are commonly called, and his active duty for training. He retained medical benefits only while on active duty or inactive duty status. Commissary and

exchange privileges were limited. He was subject to the Uniform Code of Military Justice only on drill weekends and his two weeks active duty for training. He did not accrue leave. Assignments came under the cognizance of the then Commander Naval Reserve Force.

In March 2002, plaintiff again changed status by being discharged form the Reserves and being transferred to the inactive status list pursuant to 10 U.S.C. § 12735. While in this status he does not drill and does not receive any retired pay. He is not subject to the Uniform Code of Military Justice. At age 60, he will begin receiving retired pay pursuant to 10 U.S.C. § 12731.

**6. What constitutes the "active duty in the Naval Reserve" mentioned in regard to the Physical Evaluation Board's evaluation as opposed to the "active duty" that ended in August 1996?**

The initial Physical Evaluation Board documents reflected "Not physically qualified to Continue Reserve Status." Administrative Record 106. The January 2, 2002 document stated plaintiff was found "not physically qualified for active duty in the USN Reserve." Administrative Record 126. That use of "active duty" appears to be improper and it is theorized that the person writing the document simply misused the term.

**7. How do both differ from each other, if at all, and from "active duty" in the sense of serving in the military as a full-time occupation?**

See response to question 6.

**8. And should the Court consider Defendant's action in August 1996 to be a "discharge."**

No. The August 1996 action was a separation from active duty and not a discharge.

**9. What actions constitute a military discharge and does the term only apply to release from any sort of military duty?**

A discharge is a complete separation from the naval service. 32 C.F.R. § 724.107. In the alternative he can be released from active duty, also known as separated from active duty. The

DD-214 form can be used for both although in case of a discharge another discharge certificate is provided. Discharged personnel have no further rights or responsibilities while personnel who are separated may be subject to recall to active duty. For example persons who enlist for four years incur an eight year service obligation. After the four year enlistment they are not discharged but separated from active duty and must perform the remainder of their obligation in the reserve component. 10 U.S.C. § 651.

## Conclusion

The terminology is somewhat confusing and plaintiff suggests that a telephonic oral argument may assist the court. Undersigned counsel is a retired Commander who served 22½ years with almost all of it on active duty. As well as serving on six ships, the undersigned commanded reserve activities for six years and served on the staff of the then Commander, Naval Surface Reserve Force. Oral argument might further clarify any questions the court has.

Respectfully Submitted,

/s/ John B. Wells
John B. Wells
Attorney for the Plaintiff
LA Bar #23970
Post Office Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd, Suite 201D
Slidell, LA 70458 (physical)
985-641-1855
985-649-1536 (fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that the enclosed pleading was served via the court's CM/ECF system on all counsel by this 7th day of June 2008.

/s/ John B. Wells
John B. Wells